MILLIE FISH, Administratrix, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

In Banc, December 31, 1914.

1. **REMOVAL OF CAUSES: Interstate Commerce: U. S. Employer's Liability Act.** An interstate railroad company engaged in interstate commerce, cannot have removed to the Federal court a suit for damages for personal injuries to one of its brakemen brought under the Federal Employer's Liability Act, which provides that "the jurisdiction of the courts of the United States under this act shall be concurrent with the courts of the several States, and no case arising under this act and brought

in any State court of competent jurisdiction shall be removed to any court of the United States." The jurisdiction of the inferior courts of the United States in every case depends upon the acts of Congress, and, though the act creates a right of action, this language affects only the remedy, and it explicitly forbids a removal of the action to a Federal court.

2. **CONSTITUTIONALITY OF U. S. STATUTE: Jurisdiction of State Court.** Courts of general jurisdiction in the several States have power to decide cases involving the rights of litigants under the Constitution or statutes of the United States, unless deprived of the right so to do by the terms of said Constitution or statutes; and such decisions are conclusive upon the parties unless reversed by the Supreme Court of the United States, upon a writ of error, or after a removal of the case to a Federal court in accordance with the acts of Congress. A circuit court of this State has power to decide whether a statute of the United States is or is not constitutional; there being reserved the right of a writ of error from the Supreme Court of the United States to the State court of last resort, where the State court has made a decision adverse to the party suing out the writ, upon some right or immunity guaranteed to him by the Federal statute.

3. **NEGLIGENCE: Interstate Railway: Employer's Liability Act: Defective Facilities.** The second clause of the first section of the Employer's Liability Act of the United States of April 22, 1908, gives a right of recovery upon proof (1) of a negligent defect or insufficiency of the physical instruments of transportation or other equipment of an interstate carrier, and (2) the injury or death of one of its servants due to such negligent defect or insufficiency.

4. ———: ———: ———: ———: **Water Crane.** Unless it can be said as a matter of law that the railway company exercised ordinary care in placing the water crane of its standpipe sufficiently distant from passing freight cars as to avoid injury to brakemen riding on the ladder of said passing cars, it will not be held that the administratrix of a brakeman who, while riding on the ladder of a freight car, in the performance of his duties, was struck by said water crane, and was killed, cannot recover.

5. ———: ———: ———: ———: ———: **This Case.** Plaintiff's cause of action is predicated upon the negligence of an interstate carrier, engaged in interstate commerce, in locating a standpipe or water crane at a point too close to the sides of its passing freight cars to be reasonably safe for her deceased husband to use the ladder at the side of the car in the performance of his duties as head brakeman. The time was a dark night; the train was moving from a main track to a side

track, and the brakeman mounted the ladder of a car for the purpose of signaling the conductor to stop the train; in the performance of this duty his body collided with the standpipe or water crane, which was so located as to be not more than twenty-two inches from the side of the passing car; the centers of the main and side tracks were fifteen feet apart, and the standpipe was equidistant from them. Other railroads placed similar standpipes at a greater distance. The standpipe was on defendants' yards, and it had ample room to widen the distance between the two tracks, or to locate the water crane at a point where the tracks were further apart, and this was done by other railroads. *Held*, that, despite evidence for defendant of a contrary nature, it cannot be said that defendant exercised ordinary care to install the water crane at a sufficient distance from passing cars, and the evidence made a case for the jury on the issue of negligence on the part of the defendant in providing a reasonably safe place for the performance of the duty imposed upon the brakeman; and in so holding, the fact that the performance of such duty on a dark night was in contemplation, is to be kept in view.

6. **CONTRIBUTORY NEGLIGENCE: As Defense Under U. S. Employer's Liability Act.** Section 3 of the Employer's Liability Act of the United States has abolished contributory negligence as a complete defense to any action brought under its provisions. Contributory negligence can still be shown, not to preclude a recovery, but only to diminish the damages awarded by the jury, in proportion to the amount of negligence attributable to the injured employee.

7. **ASSUMPTION OF RISKS: Under U. S. Employer's Liability Act: Master's Negligence.** Section 4 of the Federal Employer's Liability Act provides that the doctrine of assumption of risks shall not be available as a defense in any case where the railroad company has violated the statute in reference to providing safety appliances and proper equipment on its trains; and that means that the servant does not assume the risks where his injuries are due to the master's negligence in furnishing an unsafe place or defective tools; and the master's negligence in such case is to be adjudged according to the common-law rule. If the injury was inflicted on defendant's brakeman by the negligent failure of the defendant to furnish him a safe place in which to work, the brakeman did not assume the risk of injury resulting from such negligence.

8. ———: **Caution: Telegram.** A telegram sent to trainmen declaring that the water crane, with which the brakeman's body collided as he was on a ladder of a passing car, "will not clear a man hanging too far outside of car," did not require him not to hang outside of the car in performing his duties

of signaling the train, as he and other brakemen customarily did with the knowledge of defendant's officers, but merely cautioned him in a vague way to exercise ordinary care, and will not support a special plea of assumption of risks.

9. ———: Contract. A contract entered into by a brakeman with the railroad company whereby he assumed to take care of himself as far as the existing and known dangers of his employment are concerned, cannot be held to be an assumption of the risk of injury from a collision with a water crane erected a year after the contract was made.

Appeal from Daviess Circuit Court.—*Hon. Arch B. Davis,* Judge.

AFFIRMED.

*Paul E. Walker, E. M. Harber* and *A. G. Knight* for appellant.

*Platt Hubbell* and *George Hubbell* for respondent.

## STATEMENT.

The plaintiff is the widow and administratrix of Norman G. Fish, and sues to recover damages under the Federal Employer's Liability Act as amended in 1910, for his death on January 15, 1909, at Princeton, Mercer county, Missouri. The petition was filed the 21st of September, 1910, and alleges in substance: That on the date of his death said Norman G. Fish was employed as a head brakeman of a freight train by the defendant railroad company, which was an interstate carrier and engaged at the time in interstate commerce; that "prior to the 15th of January, 1909, the defendant had negligently erected on its roadway between its passing track and main line at the south end of its yards at Princeton, Missouri, an iron standpipe or water crane for the supplial of water to its engines, and negligently maintained said iron standpipe or water crane so near its said tracks and so near the sides

of passing cars and of such insufficient distance from said tracks and from the sides of passing cars as to endanger the personal safety and lives of defendant's employees in the performance of their duties, upon its trains and cars, passing through said town of Princeton, and along said standpipe or water crane. Said standpipe or water crane was then and there erected and maintained within a distance of between eighteen and twenty-four inches from the sides and side ladders of passing cars ordinarily passing on defendant's passing track, and said standpipe or water crane was of such insufficient distance from said railroad tracks and said passing cars and so near the same that it was not reasonably safe to defendant's brakeman, while on the side and side ladders of its freight car, and while in the performance of their duties on trains passing said standpipe or water crane; and said nearness of said standpipe or water crane rendered defendant's tracks, cars, and standpipe or water crane, at that point, an unsafe place to work. And at all times mentioned in this petition, the defendant knew of said nearness and said insufficient distance to said standpipe or water crane, and might have known of the same by the exercise of ordinary care and diligence.

"On January 15, 1909, at Princeton, Missouri, while the said Norman G. Fish was in the exercise of ordinary care and was in the performance of his duties as defendant's head brakeman of said freight train, and while said Norman G. Fish was on the side of one of defendant's cars engaged in his duties as head brakeman, and while it was dark and while said Norman G. Fish did not know of his proximity to said standpipe or water crane, said train, upon which the said Norman G. Fish was serving defendant as head brakeman, ran over and along defendant's said passing track and carried the said Norman G. Fish against said standpipe or water crane, whereby the head and body of Norman G. Fish was brought into contact, and

collision with and struck by said standpipe or water crane, and the said Norman G. Fish was thereby knocked under said train and his body was thereby mutilated and mangled and the said Norman G. Fish was thereby negligently killed and caused to die, which death of the said Norman G. Fish was caused by the aforesaid negligence and negligent acts of the defendant. That at the time of his death, said Norman G. Fish was a servant of the defendant in the conduct of its interstate commerce business; that his earning capacity was one hundred dollars per month.

"Wherefore, plaintiff prays damages for his death in the sum of thirty thousand dollars."

Before answering said petition the defendant filed a petition to remove the same to the Federal court on the ground of diverse citizenship, and on the further ground that it involved the construction of an amendment (April 5, 1910) of the Federal Employer's Liability Act and executed bond for removal.

The petition for removal being denied, the defendant answered in substance:

That the deceased husband of the plaintiff had been long in defendant's employ as a freight brakeman and had full knowledge of the location of the said water crane and negligently assumed such a position on the side of the car and placed his body from such distance that his injuries and death were caused by his own negligence directly contributing thereto and his assumption of the risks of such a collision; that the deceased carried and was familiar with a time-table and also with certain rules prescribed by defendant for its employees, and among other, the following:

"All employees are hereby notified that there are coal chutes, platforms, and other structures, located on the main line and on sidings, also structures and platforms belonging to private corporations and persons, located on industrial sidings and spurs, that will not clear a man riding on the side of a car, and all em-

ployees must protect themselves from injury in passing such structures."

The answer further alleged that the deceased in violation of defendant's rule on the occasion in question climbed upon one of its moving trains and attached himself to a certain car and placed his body at an unnecessary distance therefrom, and by reason of such negligence directly contributed to the injury sustained by him without any negligence on the part of the defendant, and that by so acting, he also assumed the risk of such injury.

The answer further stated that prior to his employment the deceased on the 20th of November, 1907, in order to receive employment from defendant as freight brakeman entered into a written contract in the following terms:

"I have had explained to me the dangerous nature of the service in which I am about to engage. I understand that standing in front of or getting on to an engine or car coming towards me, is dangerous, and is in violation of the rules, and if done by me will be at my own risk. I understand that great care must be exercised in approaching and passing all bridges and overhead structures, as they will not clear a man standing on the top of a high covered car; that it is dangerous to climb upon and down the sides of cars, or otherwise expose myself while passing water tank spouts, and house pipes, coal houses or chutes, seed houses, cotton platforms, signal posts, through girder bridges, switch stands, mail cranes, roundhouse doors, buildings and other structures dangerously near to the track, as they will not clear a man with safety, and that I am required to look out for the same and avoid danger. I understand that the duties of the aforesaid situation exposes me to great danger, the risk of which I assume, and agree to use constant and proper care to prevent injury to myself and others."

The answer alleged that this contract was an assumption of risk on the part of the deceased which prevented any recovery in the present action. The answer further alleged that the risks incident to the use of said water crane was not only observable by plaintiff's husband, but he was fully informed and had full knowledge of the location thereof, and that his continued use of the same prior to his death without complaint or objection was the assumption by him of the risk of injury therefrom.

Plaintiff adduced evidence tending to support the allegations contained in her petition. Defendant introduced evidence tending to show the facts pleaded in its answer. Defendant preserved a term bill of exceptions to the action of the court in denying its petition to remove the cause. After the instructions of the court, the jury brought in a verdict for plaintiff for $5000, and the defendant perfected its appeal to this court. The material evidence touching the points in controversy will be adverted to when discussing them. The Act of Congress and its Amendment, whose validity is drawn in question, or so much thereof as is material on this appeal is, to-wit:

Sections 1 and 2 simply provide for a right of action in favor of employees or their representatives, and against interstate carriers in the United States proper and all of its possessions.

The remainder of the act is, to-wit:

"Section 3. That in all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such em-

ployee; provided, that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

"Section 4.   That in any action brought against any common carrier under or by virtue of any of the provisions of this act to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

"Section 5.   That any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act, shall to that extent be void; provided, that in any action brought against any such common carrier under or by virtue of any of the provisions of this act, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

"Section 6.   That no action shall be maintained under this act unless commenced within two years from the day the cause of action accrued.

"Section 7.   That the term 'common carrier' as used in this act shall include the receiver or receivers or other persons or corporations charged with the duty of the management and operation of the business of a common carrier.

"Section 8.   That nothing in this act shall be held to limit the duty or liability of common carriers or to impair the rights of their employees under any other

act or acts of Congress, or to affect the prosecution of any pending proceeding or right of action under the Act of Congress entitled 'An Act relating to liability of common carriers in the District of Columbia and Territories, and to common carriers engaged in commerce between the States and between the States and foreign nations to their employees' approved June eleventh, nineteen hundred and six.

"Approved April 22, 1908." [35 U. S. Stat. at Large, chap. 149, p. 65.]

"An Act to Amend an Act entitled 'An Act relating to the liability of common carriers by railroad to their employees in certain cases,' approved April twenty-second, nineteen hundred and eight.

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress Assembled,* That an act entitled 'An Act relating to the liability of common carriers by railroad to their employees in certain cases,' approved April twenty-second, nineteen hundred and eight, be amended in section six so that said section shall read:

" 'Section 6. That no action shall be maintained under this act unless commenced within two years from the day the cause of action accrued.

" 'Under this act an action may be brought in a circuit court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this act shall be concurrent with that of the courts of the several States, and no case arising under this act and brought in any State court of competent jurisdiction shall be removed to any court of the United States.'

"Section 2. That said act be further amended by adding the following section as section nine of said act:

" 'Section 9. That any right of action given by this act to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury.'

"Approved, April 5, 1910." [36 U. S. Stat. at Large, chap. 143, p. 291.]

## OPINION.

### I.

BOND, J. (After stating the facts as above.)— A preliminary point presented by appellant's brief is that the trial court erred in refusing to grant its petition for removal to the Federal court on the ground of diverse citizenship. By the amendment of the Federal Employer's Liability Act of April 5, 1910, it is said with reference to the enforcement of the provisions of that law, to-wit: "The jurisdiction of the courts of the United States under this act shall be concurrent with that of the courts of the several states; and no case arising under this act, and brought in any State court of competent jurisdiction shall be removed to any court of the United States." [36 U. S. Stat. at Large, p. 291.]

.Removal of Causes.

The exact point made by appellant was held in judgment in a recent case in the Federal Court of Appeals of the Sixth Circuit, and was disposed of in a clear and conclusive opinion by WARRINGTON, Circuit Judge. [Teel v. Chesapeake & O. Ry. Co., 204 Fed. l. c. 919.] In speaking of the above provision, it is there said: "This provision is purely remedial and is couched in plain language. Congress was clearly acting within its constitutional power when it passed the amendment. While section 2 of article 3 of the Constitution declares that the judicial power shall extend

to all cases arising under that instrument and the laws of the United States, as also, among others to cases 'between citizens of different States,' yet it was long ago settled that, as to courts infⅎior to the Supreme Court, their jurisdiction in every case must depend upon some act of Congress. [Case of the Sewing Machine Companies, 85 U. S. (18 Wall.) 553, 577; Cary v. Curtis, 44 U. S. (3 How.) 236, 245; Turner v. Bank of North America, 4 Dall. 9 (note A); Loveland, App. Jur., sec. 2.] As Justice HARLAN said in Johnson Company v. Wharton, 152 U. S. 252, 260:

" 'But, except in the cases specially enumerated in the Constitution and of which this court may take cognizance, without an enabling act of Congress, the distribution of the judicial power of the United States among the courts of the United States is a matter entirely within the control of the legislative branch of the government.' "

It was accordingly held that the above amendment affected only the *remedy* for the rights of action created by the Employer's Liability Act; and that Congress having power to limit the rights of action to a particular class, might likewise limit the *remedies* given for their enforcement, and in so doing neither denied due process of law nor the equal protection of the laws. The court held that this fact distinguished the act in question from other acts which might affect constitutional or vested rights and ruled, to-wit:

"The jurisdiction conferred upon the courts of the United States is concurrent with that of the courts of the several States; and removal of any case arising under the Employer's Liability Act and brought in any State court of competent jurisdiction is explicitly forbidden." [Teel v. C. & O. Ry. Co. of Va., 204 Fed. 1. c. 919-920.] Besides the jurisdiction of the State courts in such cases has been affirmed by the Supreme Court of the United States since the appeal

herein. [Second Employers' Liability Cases, 223 U. S. 1. c. 56.]

Under this ruling of the Court of Appeals, now approved by the Supreme Court of the United States, there was no error in the ruling of the trial court, denying the petition to remove this cause to the Federal court.

The learned counsel for appellant to support his theory that the circuit court of Daviess county had no jurisdiction to pass upon the Federal act of April 5, 1910 (amendatory of the former act) says the Supreme Court of Missouri has no power "to decide whether a Federal act was constitutional or not." [Citing State v. Railroad, 212 Mo. 1. c. 684.] That was a decision of Judge LAMM, which was entirely correct, both in statement of the facts and legal conclusion thereon. The matter held in judgment was whether or not a statute of the State of Missouri relating to working hours of telegraph operators, etc., was valid in view of the fact that Congress in the exercise of its power to control interstate commerce had occupied the field and covered the same subject-matter, and had specifically provided that any violation of the act should be redressed by a suit in the district court of the United States. Judge LAMM held, as is universally held, that the advent of the Federal act superseded all State legislation on the same subject. The validity of the Federal act was not before him, and by its terms no State court could take cognizance of a suit brought for any violation of its provisions. He necessarily held, therefore, in accordance with the provisions of the act, that the Federal courts *alone* could take jurisdiction of the specific suits for its violation. The writer of that opinion had clearly in mind that one of the classes of cases wherein appellate jurisdiction is lodged in this court, arises on an appeal "involving the construction of the Constitution of the United States or . . . where the validity of a treaty or statute of or author-

ity exercised under the United States is drawn in question'' (Constitution, art. 6, sec. 12); for he so held in Miller v. Connor, 250 Mo. 677, l. c. 683.

The law is settled that courts of general jurisdiction in the several States have power to decide cases involving the rights of litigants under the Constitution or statutes of the United States unless deprived of the right so to do by the terms of the Federal Constitution or acts of Congress; and such decisions of the State courts are conclusive upon the parties unless reversed upon writ of error in the Supreme Court of the United States or after a removal of the case to the Federal courts in accordance with the acts of Congress. The very right to a writ of error to a court of last resort of one of the states from the Supreme Court of the United States, is grounded upon the fact that the former court *has made* a *decision* adverse to the party suing out the writ of error, upon some Federal right or immunity possessed by him. [3 Foster's Fed. Prac. (5 Ed.), sec. 692.]

Moreover, the Supreme Court of this State has jurisdiction to decide the question of the validity of an act of the Legislature of a sister State from the standpoint of its conformity to the Constitution of the United States. [Kwilecki v. Holman, 258 Mo. 624.] There is no merit in appellant's contention on this point.

It follows that the present appeal, although the amount in dispute was within the pecuniary limit of the jurisdiction of the Kansas City Court of Appeals, was properly brought to this court because in its answer defendant *draws in question* the constitutionality of the amendment to the Federal Employer's Liability Act (Specialty Co. v. Glass Co., 243 Mo. 356; Schwyhart v. Barrett, 223 Mo. 497); and that point had not been decided until after the appeal was taken to this court. [Second Employers' Liability Cases, 223 U. S. l. c. 56.]

## II.

The act of Congress, under which plaintiff seeks to recover in this case, is set out in full in the statement herein and also at page 6; Vol. 223, U. S. Reports (Second Em. Liab. Cases). A resume of its contents is made in the recent decision of the Supreme Court of the United States (Seaboard Air Line v. Horton, 233 U. S. 1. c. 501), where it is said in substance that its first section gives a right of action (under certain conditions) for injury or death of the employee caused by the negligence of any of the officers, agents or servants of an interstate carrier, or by reason of any defect or insufficiency *due to its negligence,* and its cars, engines, appliances, machinery, tracks, road beds, works, boats, wharfs or other equipment. The first clause of this section abolishes the common law rule that a servant is held to assume the risk of an injury caused to him by the negligence of a fellow-servant. The second clause grants the right to recover upon proof of a *negligent* defect or insufficiency of the physical instruments of transportation or other equipment.

<div style="margin-left:2em">Employer's Liability Act: Negligence: Instruments of Transportation.</div>

The plaintiff's cause of action is predicated upon this latter clause. In order to recover therefor it was necessary for her to adduce evidence tending to prove negligence on the part of the defendant in locating the standpipe or water crane at a point too close to the sides of its passing trains to be reasonably safe for the deceased to use the ladder at the side of a car for the performance of his duties as head freight brakeman. There is substantial evidence in the record which tends to prove that at the time of his injury the deceased had mounted the ladder of the third car of a freight train belonging to defendant which had moved from its main track on a siding at Princeton, Missouri, for the purpose of signalling the conductor to stop the train after it had cleared the main track and gotten

fully upon the sidetrack; that while in and about the performance of this duty, his head or other portion of his body collided with the standpipe or water crane, which was so located as to be not more than twenty-two inches from the side of the passing car, and that by being thus struck he received the injuries which resulted in his death. The evidence tends to show that this standpipe was placed at a point equidistant from the centers, fifteen feet apart, of the main track and the side track. There was evidence tending to show that other railroads placed similar standpipes or water cranes at a greater distance. There was evidence tending to show that the erection in question was on the yards of the railroad company where it had ample room to widen the distance between its two tracks or to locate the water crane at a point where they were further apart, and there was also evidence tending to show that this was done by other railroad companies. Under this state of the evidence, and despite evidence on behalf of defendant of a contrary nature, we cannot say that the defendant exercised ordinary care in installing the water crane at such a distance from the side of a passing car whereon its brakemen, as shown by the record, were accustomed to stand on ladders and give signals to the conductor of a moving train. This particular injury was occasioned on a dark night, and necessarily that should have been in contemplation when the crane was erected, for this kind of work was required to be done in the night, as well as in the day. A careful consideration of the evidence satisfies us that the proof adduced by plaintiff tended to make out a case for the jury on the issue of negligence on the part of the defendant in providing a reasonably safe place for the performance of the duties imposed upon the deceased and other brakemen.

### III.

The question therefore is, whether or not upon either of its pleas, i. e., contributory negligence

**Assumption of Risks.** or assumption of risks, the evidence adduced by defendant, would have justified the trial court in taking the case from the jury? Taking these in order, it must be borne in mind that section 3 of the Federal Employer's Liability Act has abolished at one stroke the defense of contributory negligence as a complete bar to an action brought under its provisions. Contributory negligence may still be shown, but its effect is not to preclude a recovery, but only to diminish the damages awarded by the jury "in proportion to the amount of negligence attributable to such employee." The moderate verdict rendered in this case tends to show that the jury followed the guidance of the statute. At any rate, we may dismiss that assignment of error, because it is answered by the plain letter of the law.

The only question presenting any difficulty in this case, is the question of the defense arising upon the theory that the deceased assumed the risk of being struck by this water crane when he entered into the services of the defendant. In this connection it must be borne in mind that section 4 of the Federal Employer's Liability Act provides in terms that the doctrine of assumption of risk shall not be available in any case where the master, or employer, has violated any Federal statute in reference to providing safety appliances or proper equipment on its trains. The thought in the mind of Congress evidently was that the doctrine of assumption of risk should not obtain where the negligence of the master had supervened, and that provision of the act is in strict consonance with the law as established in this State.

This exclusion of the defense of the assumption of risk in cases of Federal statutory negligence on the part of the master, leaves that defense available in other cases. And in applying it in accordance with that limitation, it has been recently held by the Supreme Court of the United States, in a case appealed

from the Supreme Court of North Carolina and which involved the construction of the Federal Employer's Liability Act on the point under review, that in other than the instances excepted in the statutes, the test would be whether or not there was an assumption of risk on the part of the plaintiff or his representative according to the common law rule. In that case the question was whether failure of the master to comply with a State statute, excluded the defense of assumption of risk. The court held that it did not, adding: "But the necessary result of this is, not to leave the employer responsible for the consequences of any defect in such an appliance, excluding the common law rule as to assumption of risk, but to leave the matter in this respect open to the *ordinary application of the common law rule.* The adoption of the opposite view would in effect leave the several State laws, and not the act of Congress, to control the subject-matter." (Italics ours.) [Seaboard Air Line v. Horton, 233 U. S. l. c. 507.]

The effect of that decision and of the act construed therein, and of the previous decision of the Supreme Court devolving concurrent jurisdiction upon the courts of the several states to enforce the provisions of said act, is to require them in passing on the defense of assumption of risk to apply as a standard the common law rule on that subject. This points a plain pathway, that of the common law as adopted, interpreted, expounded and enforced in the respective states.

For almost one hundred years, since January, 1816, the common law of England, except as inconsistent with the Constitution of the United States and this State, or the State and Federal statute laws for the time being, has been a part of the jurisprudence administered by the Supreme Court of Missouri. [R. S. 1909, sec. 8047; State ex rel. v. Withrow, 133 Mo.

500; Baker v. Crandall, 78 Mo. 584; Duke v. Harper, 66 Mo. 51.]

Among other subjects thus made a part of the law of this State were the doctrines of *contributory negligence and assumption of risk*. It is the settled rule of the common law as interpreted and enforced in this State that these two defenses are separate and distinct from each other and have a different origin and application. The former is applicable generally in actions of tort. The latter is confined to the relation of master and servant and their contracts with each other. Contributory negligence, as the terms import, is nothing more than negligence on the part of a defendant which directly contributes to or causes his injuries, and it therefore implies on his part the *neglect* of the duty imposed upon all men to observe ordinary care. Being thus a breach of duty, it is strictly founded in tort.

On the other hand, "assumption of risk" is confined to the relation of master and servant, and means what its terms denote, that when a hiring takes place, the parties mutually undertake: first, the master to pay a stipulated wage and to exercise ordinary care in providing a reasonably safe place and appliances for the work to be done; second, the servant to *assume* or take the risks of any mishaps which may befall him, after the observance of such care by the master, which are the ordinary incidents of the work which he engaged to perform. It is apparent that these several obligations assumed by the respective parties, are reciprocal considerations, moving from the one to the other, and that they strictly rest upon contracts to that effect implied between them by sound legal policy. Necessarily, therefore, the *assumption* of neither goes beyond its terms. Thus measured, the servant does not assume any dangers or perils caused by the negligence of the master. In cases therefore where the servant is injured by the negligence of the master

in furnishing an unsafe place or defective tools, his suit for such injuries cannot be defeated on any theory of assumption of such risk, for his implied contract did not include the risk of the master's negligence. It follows, that when the servant is injured by a peril created by the negligence of his master the only defense to a suit therefor is that the servant, with no reasonable grounds to believe he could escape. such danger by ordinary care, negligently disregarded its imminence and thereby directly contributed to his own injury, or in other words, that the servant was guilty of "contributory negligence." That is the common law as administered in Missouri. [Charlton v. Railroad, 200 Mo. 1. c. 433, and cases cited; George v. Railroad, 225 Mo. 1. c. 407, and cases cited.] This principle obviates the incongruity of the notion that a master should reap the benefit of a contract, that he might *negligently* injure a servant with legal immunity from the damage thus inflicted. This distinction inheres in the diverse nature of the two doctrines. It was borne in mind by Congress when it enacted the Federal Employer's Act, for it abolished the bar of contributory negligence, and left only a limited application of the doctrine of assumption of risk, and this evidently because of the essential difference between the two, for if they were identical the abrogation of one would have disposed of the other. In speaking of the Missouri law on these subjects, our Brother FARIS, in Division No. Two, in a recent case, accurately said: We use the terms "assumption of risk to express the mere hazards which appertain to a dangerous vocation when unaffected by negligence of the master. When, however, the servant enters into or remains in the service of the master with actual or constructive knowledge of defects arising from the master's negligence and without a promise of remedy, we speak of this in our Missouri courts as contributory negligence."

It is evident under the common rule of assumption of risk, as declared and enforced in this State, there was no ground upon which the case could have been taken from a jury, for as we have seen the plaintiff introduced evidence which tended to show that the injury was inflicted upon her husband by the negligent failure of defendant to furnish him a safe place in which to work. And in this connection, it may be well to say that the long list of authorities cited by appellant that the standpipe or water crane was one of approved type and in common use, have no relevancy to the matter in hand. The insecurity of the place where the plaintiff's husband was required to work did not arise from the kind of instrument used for conducting the water in the engines, but arose from its being located too near the sides of the passing freight cars to be safe for men engaged in their duties on the ladders attached to such cars. At least, that was the question presented, and such was the finding of the jury.

Defendant also introduced evidence tending to show the telegrams and pink bulletins were communicated to the deceased as to the danger to be encountered after the erection of this standpipe or water crane at Princeton. This evidence was not conclusive, because it was not admitted, and the jury had the power to disregard it, but it would not, under the Missouri classification of contributory negligence and assumption of risk, have supported the latter plea, and if the jury believed that it tended to show contributory negligence in some degree on the part of the deceased, he would still be entitled to recover under the Federal Act whatever under all the evidence they should think he was entitled to, after reducing the amount in proportion to his contributory negligence. But, besides all that, the main one of these warnings related to the communication sent out by defendant to its trainmen in the following terms: ''Water cranes at Prince-

ton are now ready for use. They are located between the main and passing tracks. One east and one west of depot. They will not clear a man hanging too far outside of car.'' This was not a proper warning. It did not tell the brakemen *not* to hang out on the side of the car in performing signalling duties, as the evidence tends to show they were in the habit of doing with the knowledge of defendant's officers. But merely cautioned him in a vague way not to ''hang too far outside the car.'' In other words, to exercise ordinary care, which the evidence does not show the deceased failed to do.

Neither can it be maintained that the deceased made any contract with reference to the danger created by the installation of this water crane when he entered into the service of defendant, for it was not erected for more than a year after he was employed. Besides, the substance of his contract, as stated in the answer, was a stipulation to take care of himself as far as the existing and known dangers of his work are concerned. But under the pink bulletin warning, which seems to be that upon which appellant lays most stress, there was no reason why the deceased might not have attempted to perform his signalling work while on the ladder of the passing car, as had been customarily done, without expecting that, notwithstanding that warning, an iron pipe had been placed within twenty-two inches of the side of the car where he had climbed on a ladder. This presented a very narrow space within which he would have been compelled to crowd his body and wave his signal lamp with safety. It fairly admitted of a legitimate inference of negligent maintenance on the part of the defendant. Yet by the terms of the pink bulletin the deceased was told in effect that he might lean out unless he leaned out too far. It is well to note that this warning did not forbid him and other workmen to stand on the ladder when they were required to pass this point, but merely

cautioned them upon a seeming assumption that they would occupy that place. There is nothing in this record to show that in passing that point the deceased did not act with reference to the duties in which he was engaged in the same manner in which they had been performed before. But if he did not act with due care, his contributory negligence and that of the defendant, when considered together and compared by the jury, as they were authorized to do under the terms of the Federal Employer's Liability Act, resulted in a verdict much smaller than is usually given.

Defendant complains of certain instructions, but after a careful examination of the points made in the record, we are unable to find any reversible error. The judgment in this case is therefore affirmed. All concur, *Brown* and *Faris, JJ.,* in result.