# ARTHUR L. YOUNG v. JAMES K. LUSK et al., Receivers, Appellants.

### Division One, July 18, 1916.

1. **NEGLIGENCE: Interstate Carrier: Showing.** Where the petition charged that the defendants were operating a railroad between the State of Missouri and other named states, an answer admitting this allegation is an admission that defendants are interstate carriers, and brings plaintiff within the purview of the Federal Employer's Liability Act. And the same thing is established by evidence to the effect that plaintiff was working as an airbrake inspector in a gravity railroad yard, from which cars were constantly passing into another state and were constantly being brought from said state into the yards.

2. **———: ———: Federal Act. Switching Cars: Failure to Warn.** The Federal Employers' Liability Act (35 U. S. Stat. at L. p. 65), declaring that every common carrier engaged in interstate commerce "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier" makes liable the carrier for injury to an airbrake inspector in the yards due to the negligent switching of cars by the carrier's trainmen or due to their negligent failure to warn him of the approach of cars.

3. **———: Airbrake Inspector: Shunting Cars: No Warning.** An airbrake inspector, at his post of duty at the rear end of stationary cars, required to be among the cars and inspect the airbrakes as the cars are shunted in, is entitled to warning when other cars are driven against the stationary cars; and it is negligence to drive those cars over him without warning.

4. **———: Assumption of Risk.** If the negligence charged i not a violation of the Safety Appliance Act, the defense of assumption of risks may be a defense under the Federal Employers' Liability Act, if the facts authorize it. But the servant does not assume the risk of his master's negligence; and if his injuries are due to his master's failure to warn him when proper regard for his safety requires such warning, the defense of the assumption of risks is not available.

5. **———: Warning: Blue Flag Rule: Waiver.** Where a rule required employees working around stationary cars to put up

268 Mo.—40

a blue flag, evidence by an airbrake inspector of cars being constantly shunted in upon the tracks where he was required to work, that the rule was generally not observed and that the superintending officer had told him not to try to observe the rule, is sufficient to submit the question of a waiver of the rule to the jury, and such waiver being established a failure to observe the rule does not bar a recovery.

6. ————: **Excessive Verdict.** Where the injuries consisted of the bare fact of an amputated left arm of an employee whose wage was $2.40 per day, a verdict for $12,000 is too large by $4,000.

Appeal from St. Louis City Circuit Court.—*Hon. Thomas C. Hennings*, Judge.

AFFIRMED (*conditionally*).

*W. F. Evans, E. T. Miller* and *A. E. Haid* for appellants.

(1) Plaintiff made no case. (a) Plaintiff and defendants were not at the time of the injury both engaged in interstate commerce. Thompson v. Railroad, 262 Mo. 468; Railroad v. Behrens, 233 U. S. 473; Federal Emp. Liability Act, 35 U. S. Stat. at L., p. 65, as amended by 36 U. S. Statutes L. 291. (b) The record fails to show any negligence on the part of defendants. The negligence charged is not a violation of any Federal statute enacted for the safety of employees. The negligence charged is failing to warn plaintiff of the approach of cars when defendants should have known of plaintiff's position of peril. Defendants were under no obligation to warn plaintiff. Degonia v. Railroad, 224 Mo. 564; Nivert v. Railroad, 232 Mo. 626; Rashall v. Railroad, 249 Mo. 509; Gabal v. Railroad, 251 Mo. 257; Hitz v. Railroad, 152 Mo. App. 687; Ginnochio v. Railroad, 155 Mo. App. 163; Aerkfetz v. Humphreys, 145 U. S. 418; Connelley v. Railroad, 201 Fed. 54; Boldt v. Railroad, 218 Fed. 367. (c) Plaintiff as-

sumed the risk of the injuries sustained by him. Nivert v. Railroad, 232 Mo. 626; Railroad v. Horton, 233 U. S. 492; Connelley v. Railroad, 201 Fed. 54; Boldt v. Railroad, 218 Fed. 367. (2) Plaintiff's instruction number 1 is erroneous. (a) There was no evidence that the cars which struck the three stationary cars were moved with rapidity against those cars. (b) There was no evidence that the cars on Track Four, or that the train on the lead track, were at the time plaintiff was injured, engaged in interstate commerce. Thompson v. Railroad, 262 Mo. 468; Railroad v. Behrens, 233 U. S. 473. (c) The instruction erroneously declared the law to be that the switching crew should have known of plaintiff's perilous position and warned him of the approach of the cars. Degonia v. Railroad, 224 Mo. 564; Nivert v. Railroad, 232 Mo. 626; Rashall v Railroad, 249 Mo. 509; Gabal v. Railroad, 251 Mo. 257; Aerkfetz v. Humphreys, 145 U. S. 418; Boldt v. Railroad, 218 Fed. 367. (3) The instruction given of the court's own motion was erroneous. The instruction should have been given as requested by defendants in their refused instruction. (a) The blue flag rule, which was the basis of the instruction, was a just requirement, and plaintiff should have complied therewith. Mason v. Railroad, 161 Mo. App. 610; Railroad v. Pool, 160 U. S. 438. (b) The court should not have submitted to the jury the question of the waiver of the rule. If the question of waiver should have been submitted the court should have instructed the jury what facts would constitute a waiver. State v. Hardelein, 169 Mo. 579; McNamara v. Transit Co., 182 Mo. 676; Commission Co. v. Hunter, 91 Mo. App. 333; Nulton v. Croskey, 111 Mo. App. 18; Joyce v. Transit Co., 111 Mo. App. 565; Ayers v. Railroad, 124 Mo. App. 422; State ex rel. v. Allen, 124 Mo. App. 465. (4) The verdict is

grossly excessive, and bears no relation to the injuries sustained. The jury disregarded the contributory negligence of the plaintiff.

*Joseph A. Wright* for respondent.

(1) The plaintiff is entitled to the benefit of the Federal Employers' Liability Act of April 22, 1908. Railroad v. Seale, 229 U. S. 156; Pedersen v. Railroad, 229 U. S. 146; Railroad v. Carr, 238 U. S. 260; Railroad v. Zachary, 232 U. S. 248; Walsh v. Railroad, 223 U. S. 6; Seaboard Air Line v. Koenecke, 239 U. S. 352; Railroad v. Glinn, 219 Fed. 148; Lombardo v. Railroad, 223 Fed. 427; Railroad v. Russell, 209 Fed. 795; Law v. Railroad, 208 Fed. 869. (2) The negligence of defendants is established by the evidence and the case properly submitted to the jury. Seaboard Air Line v. Koenecke, 239 U. S. 352; Kame v. Railroad, 254 Mo. 196; Koerner v. Car Co., 209 Mo. 141; Baker v. Railroad, 147 Mo. 158; Colasurdo v. Railroad, 180 Fed. 832; Railroad v. Johnson, 161 Ky. 824; Railroad v. Hennessey, 177 Ind. 64; Dowd v. Railroad, 170 N. Y. 459; Doing v. Railroad, 151 N. W. 579; Anable v. Railroad, 138 App. Div. (N. Y.) 380; Brady v. Railroad, 184 Mass. 225; Canon v. Railroad, 101 Iowa, 613; Merrill v. Railroad, 29 Utah, 264. (3) The issue of assumption of risk, if defendants were entitled under the evidence to have same submitted to the jury, has been passed on by the jury under an instruction most favorable to defendants. Fish v. Railroad, 263 Mo. 106; Seaboard Air Line v. Horton, 239 U. S. 180; Railroad v. Wright, 235 U. S. 376; Seaboard Air Line v. Horton, 233 U. S. 492; Railroad v. Hall, 232 U. S. 94; McGovern v. Railroad, 235 U. S. 389. (4) The issue joined upon the blue flag rule was without error submitted to the jury. (a) The blue flag rule may be waived. 3 Labatt on Master & Servant, par.

1138; Devoe v. New York Central, 174 N. Y. 1; Anable v. New York Central, 138 App. Div. (N. Y.) 380; Brady v. Railroad, 184 Mass. 225; Merrill v. Oregon Short Line, 29 Utah, 264. (b) The instruction on the blue flag rule was proper, and defendants are not in position to complain thereof. Norris v. Railroad, 239 Mo. 695; King v. St. Louis, 250 Mo. 501; State ex rel. v. Reynolds, 257 Mo. 19; Sang v. St. Louis, 262 Mo. 454; Stotler v. Railroad, 200 Mo. 107; Bank v. Lee, 182 Mo. App. 185; Crow v. Lutz, 175 Mo. App. 427; McMahon v. Macabees, 151 Mo. 522; Griffith v. Royal Arcanum, 182 Mo. App. 644; Estel v. Railroad, 56 Mo. 282; Ins. Co. v. Hauck, 83 Mo. 21; Jordan v. Moulding Co., 77 Mo. App. 572; Hopkins v. Modern Woodmen, 94 Mo. App. 402.

GRAVES, P. J.—Action for personal injuries brought in the State circuit court in St. Louis, under the Federal Employers' Liability Act of April 22, 1908. The negligence charged is best stated in the language of the petition, thus:

"That at about 4:45 p. m. on said 27th day of August, 1914, plaintiff, in the discharge of his duties as such employee, was trying to turn the angle-cock of the airbrake equipment of a freight car and at the northeast of a string of three freight cars on one of the tracks in said Frisco freight yards, and whilst so engaged a switching crew of defendants consisting of an engineer, fireman, foreman and two brakemen, while acting within the scope of their duties, and while so employed by defendants in said yards, and while both said switching crew and plaintiff were actually engaged as such employees in carrying on of commerce for defendants as such receivers between the State of Missouri and the other States of the United States hereinbefore named, in violation of an Act of Congress approved April 22, 1908, en-

titled 'An act relating to the liability of common carriers by railroad to their employees in certain cases,' carelessly and negligently made a (flying) switch with about three or four other freight cars coupled together, causing said cars to be moved with rapidity after the switch engine had been uncoupled therefrom along and down the track where the said car was standing upon which plaintiff was working, as aforesaid, and carelessly and negligently caused said string of cars thus being moved to strike the string of cars standing on said track at the southwest end thereof, thereby causing plaintiff to be violently struck by the end of said car upon which he was working and thrown on the tracks, and his left arm run over by one of the wheels and trucks, and so multilated as to necessitate its immediate amputation and bruising and contusing his back and shoulders.

"That said cars were thus switched and run by said switching crew upon said string of cars where plaintiff was working without any warning to plaintiff, and when they knew, or by the exercise of ordinary care might have known, that plaintiff was at said northeast end of said car and string of cars standing on said track and in a position of peril and danger while discharging his said duties as an employee of defendants by reason of switching and running of said cars."

The answer, after making certain formal admissions, pleads three defenses: (1) contributory negligence; (2) assumption of risk, and (3) violation of a designated rule of the company.

Upon a trial before a jury the plaintiff had a verdict for $12,000 upon which judgment was duly entered, and from such judgment, defendants, as receivers of what is called the "Frisco Railroad," have appealed.

The assignment of errors runs the usual gamut in cases of this character, and the evidence, so far as material, can best be stated in connection with the points for discussion.

I. Plaintiff, aged 47 years at date of accident, as a railroad man of many years experience. At the time of accident he was engaged by defendants as air inspector in the yards of the St. Louis & San Francisco Railroad Co. at or near Chouteau Ave., St. Louis, Mo. His duties were to couple up the air appliances as cars were being put in a train, and after the train was made up and the engine attached, to test the air on the completed train. When not thus engaged he did some minor repair work. He had worked in this capacity some months prior to his unfortunate injury.

Defendant urges that plaintiff's case failed for several reasons, and that their demurrer to the testimony should have been sustained. Of these in their order.

II. First it is urged that plaintiff failed to show that he was so engaged at the time of **Interstate Carrier.** injury as to bring him within the Federal law, supra. This contention cannot be sustained. The petition charged that the defendants were operating a railroad between the State of Missouri and other named states, and the answer admitted this portion of the petition. The defendants were therefore admittedly interstate carriers.

The yards in which plaintiff was at work was what is known as a gravity yard. Through it ran a "lead" track, and from this "lead" track there were a number of tracks (some 26 or 27) connected therewith by means of switches. The surface of the ground so sloped that cars could be pushed in on these several tracks, and would move down them

without power, or by mere gravity. At the time of the accident plaintiff was working with cars on track four, having just left track five. As to the use of these several tracks he testified:

"Q. How long is this Chouteau Avenue yard, Mr. Young—can you tell us? A. Why, this yard I was working in, the in-bound yard, is something about a quarter or half-mile long, hardly a half; something between that; I believe Track 4 held the biggest string of cars, I believe forty-six cars.

"Q. Were you working in-bound or out-bound? A. Working on the outbound track, but I worked in-bound and out-bound; trains would come in, and we would make them up there on that other track, and they would go through; dead freight came there to this other yard.

"Q. In what track were you working when you were hurt? A. No. 4.

"Q. What was that used for? A. Dead freight going east that was used for.

"Q. And in these Frisco tracks or yards were certain tracks assigned for certain railroads and certain places in the makeup of out-bound cars? Or freight? A. Yes, sir.

"Q. What different tracks were on the out-bound, if you remember? A. Why, four, five, six, seven, eight, nine, fourteen, seventeen, fifteen and sixteen; fifteen and sixteen the stuff was westboud, stuff went west.

"Q. The other tracks were east-bound? A. Yes, sir; ten, eleven and twelve were mostly empty cars, went to the house for loading.

"Q. Track 4, what was it used for, out-bound? A. The cars were all carded 'bridge' on there; all went to Illinois, and on different roads after they got to Illinois.

"Q. What bridge did that go over? A. Eads bridge.

"Q. Did the Frisco put a label on cars, any distinct label, going over Eads bridge? A. Yes, sir; always had a green card they marked 'Bridge.'

"Q. What's the last words on the check or tag? A. Just 'bridge,' then it stated what road after it got across, but the green card was marked 'To Bridge.'

"Q. Do you know what was the name of the railroad on the side of this car where you were working when you got hurt? A. No. I never noticed where it was going or what road it was delivered to; it was delivered to the bridge, I didn't notice what bridge.

"Q. The name on the side of the car? A. Oh, that was Houston & Texas Central.

"Q. Do you know where that railroad operates? A. In Texas."

Later on he further says:

"Q. Don't they receive cars on tracks 4, 5 and 6, and deliver to industries on this side of the river, I mean? A. Not that I know of; I never seen them billed that way. Everything on four was always carded 'Bridge' unless sometimes they were not using it, and throw a lot of junk on there. . .

"Q. Did you look at the label on all three of the cars? A. Yes, all three on there; they were carded 'Bridge.'

"Q. Where were those labels placed on the cars? A. On the side of the cars, supposed to be placed on the north end of the car, on the west side they are supposed to be.

"Q. When did you see labels on all three of the cars? A. I saw them when I came up there."

Witness Allen W. Harvey, among other things said:

"Q. Those yards up there are used for the receiving of freight cars from all over the United States, aren't they? A. Yes; I expect in the course of every few minutes there is a car goes from there to every point in the United States in these yards.

"Q. Cars go in and out of those yards for many states, don't they? Different states in the Union? A. Yes, I guess they do."

Cars for the bridge crossed the river and went to the State of Illinois. The above was ample evidence upon which to submit, under proper instructions, the question as to whether or not the plaintiff and the railroad were engaged in interstate commerce at the time of the accident. On this question the demurrer was well overruled.

III. The next contention of the defendants is thus stated in the brief:

**Negligent Switching of Cars and Failure to Warn.** "The record fails to show any negligence on the part of defendants. The negligence charged is not a violation of any Federal statute enacted for the safety of employees. The negligence charged is failing to warn plaintiff of the approach of cars when defendants should have known of plaintiff's position of peril. Defendants were under no obligation to warn plaintiff."

This contention, like the tongue of the serpent, is forked. We have (1) no negligence shown as against defendants, (2) that the negligence charged does not fall within the purview of the Federal act, and (3) that the negligence charged in the petition is a failure to warn plaintiff of the approach of the cars.

The latter statement can be shortly disposed of by a reading of the petition. The petition charges two acts of negligence, and the defendants are in

error when they say that a failure to warn the plaintiff is all the negligence charged. The previous portion of the petition charged a negligent switching of the cars by the switching crew.

Whether the negligence charged falls within the purview of the Federal act is best determined from the wording of that act. 35 U. S. Statutes at Large, page 65, so far as applicable here, reads:

"That every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for *such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier,* or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, tracks, roadbed, works, boats, wharfs, or other equipment."

The italics are ours. Both acts of negligence (if they be negligence) charged in this petition, were acts of the agents or employees of the defendants, and fall fairly within the terms of this statute. The switching of the cars was an act of the servants and employees of defendants. The failure to warn, if such failure is negligent, is an act of the servants or employees of the defendants. We think that the

negligence charged is such as falls within the purview of the Federal law. We mean by this that the' negligent handling of·cars by agents and employees of a railroad which results in injury to another employee is actionable under this law. And further that there might be cases where the failure to warn, would likewise be actionable under this law. The 'real question is whether or not the evidence discloses negligence in either of the two particulars charged. That we take next.

IV. Whilst the language of the petition is broad enough to cover two acts of negligence, as above indicated, yet plaintiff did not see fit to so submit his case in the trial court. The matter was thus submitted, by instruction, below:

Airbrake Inspector: No Warning of Shunted Cars.

"And if the jury further find and believe from the evidence that while he was so engaged a switching crew of defendants, in charge of the engine and cars mentioned in the evidence, and while acting within the scope of their duties, and while so employed by defendants in said yards, carelessly and negligently caused and suffered said cars to be moved with rapidity against or into the cars on which plaintiff was working, thereby causing said cars to run against the plaintiff and knock him down and injure the plaintiff; and if the jury further find and believe from the evidence that said switching crew, by the exercise of ordinary care, should have known that plaintiff was working on said car in a situation of danger from injury by the movement of said cars, and failed to warn said plaintiff of the approach of said cars, and that by a timely warning of the approach of said cars plaintiff could, by the exercise of ordinary care, have avoided injury therefrom; and if the jury further find and believe from

the evidence that at said time and place said switching crew and plaintiff were actually engaged in carrying interstate commerce between the State of Missouri and the State of Illinois; and if the jury find and believe from the evidence that plaintiff's injury, if any, was not the result of the ordinary risks or dangers assumed by him in his contract of employment by defendants, then your verdict will be for plaintiff.''

This instruction did not permit a recovery `on mere proof of a negligent switching of the cars at a rapid rate, but bottoms plaintiff's right to recover on failure to warn. So whilst defendants' counsel is in error in saying ''the negligence charged is failing to warn plaintiff,'' yet the submission below was on that theory. The instant verdict, if sustained, must be sustained on the idea (1) that a failure to warn was negligence under the circumstances, and (2) that such failure was the proximate cause of the injury.

The evidence shows that whilst plaintiff was working upon track five, three cars were put in upon track four. These cars had their brakes set to keep them from moving on down the track. Plaintiff went to the end car (then located the greatest distance from the switch) for the purpose of turning an angle-cock and was in the act of turning it when injured. He was kept there longer than usual because the angle-cock was rusted. Whilst he was there the switch crew put in another car, and on this car was an employee by the name of Harvey. Harvey had been with the first three cars when they were put in and had put on their brakes. Harvey was told to remain with this single car, that others were coming. This he did, and the switching crew cut off two more cars from the train on the lead track and switched them in on track four. These

cars struck the car upon which Harvey was standing, and he then put on the brakes on that car, and started to a tank car next to it, when the three cars he was then with, struck the three stationary cars (at the end of one of which, plaintiff was working) and moved them, so that the plaintiff was knocked down and run over by the car, inflicting the injuries sued for herein.

There is no evidence of the speed at which these cars were running when they struck the car upon which Harvey was standing, nor at the time they struck the three stationary cars. The only circumstances is that the three stationary cars were moved further down the track some 315 feet by the impact.

There is evidence in the record of what is known as the "blue flag rule." This rule required employees working around stationary cars to put out a blue flag, and then other cars would not be pushed against them. There is evidence tending to show that this rule was impracticable, so far as the use of the blue flag by an air inspector was concerned, and that the superintending officer over the plaintiff in the service of the company had told plaintiff not to try to use the blue flag. That it could not be successfully used in his work. The evidence discloses that cars were being continuously shunted in upon the tracks from the lead track, and that it was plaintiff's duty to go among these cars upon the several tracks and test and couple up the air appliances.

There is also evidence tending to show the general nonobservance of this "blue flag rule." There is also evidence that there was no means provided on the cars by which warning bell or whistle could be given.

The question is what was the duty of defendants under these facts? The duties of plaintiff re-

quired him to be among the cars standing upon the tracks. Likewise to make up its trains defendants had to run other cars in upon the tracks when and where plaintiff was working. The facts of this case distinguishes it from a case where a section hand is working upon an open track. Here the very duties of the plaintiff required him at times to be in position where he could not observe the shunting in of cars upon the tracks where he was working. He had to examine and repair the air appliances, and couple the same between the cars. If, through Rowie, the general foreman, he was directed (as testified to by plaintiff), not to use the blue flag to notify the parties upon the incoming cars that he was working upon the cars, then it would seem that a notice or warning of some kind would be required of defendants. They cannot place a man at work between stationary cars, and without notice or warning shunt in other cars, and thus maim and cripple him. The facts of this case bring it within the line of car repairers' cases. It more nearly falls within the rule of these cases. This rule was reiterated, and in some respects, in my judgment, extended, in the more recent case of Koerner v. St. Louis Car Co., 209 Mo. 141.

In this case it will not do to say that defendants or their servants did not know that plaintiff was in a place of peril. Both defendants and their employees knew that these were stationary cars ahead of them when they shunted in these cars. They knew that the duty of plaintiff required him to be there, and they should have taken some precaution to obviate his injury. [Williams v. Wabash Ry. Co., 175 S. W. l. c. 903; Kame v. Railroad, 254 Mo. 175.] We conclude that the facts of this case, as presented by plaintiff's side of the case, were sufficient to make out a case of negligence for failure to warn.

V. Nor is there substance in the contention that plaintiff assumed the risk. The charge in the petition is not such as to bar the defense of assumption of risk, because under the Federal act "such employee shall not be held to have assumed the risks of his own employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." In all other cases the defense lies, if the facts authorize it. [Fish v. Railroad, 263 Mo. 106.]

*Assumption of Risks.*

Here the negligence charged was not a violation of any Safety Appliance Act, and hence plaintiff's case does not fall within the exception made by section 4 of the Federal Act of 1908. But the facts of this case do not sustain the doctrine of assumption of risk. A servant never assumes the risk of the master's negligence. He assumes the usual and ordinary risk of the employment, but to these cannot be added the negligence of the master. A failure to warn was the neglect of the master. [Koerner v. Car Co., supra.]

VI. It is insisted that plaintiff's failure to comply with the blue flag rule bars his recovery. Whether or not that rule had been waived by the defendants was properly submitted to the jury and upon ample evidence to sustain their verdict. This question therefore drops from the case.

*Blue Flag Rule.*

VII. What we have said disposes of some contentions as to 'refused instructions. We think there is but one question of moment left, and that is the amount of the damages. Defendants urge that under all the facts it is excessive. We are inclined to think that it is excessive.

*Excessive Verdict.*

The plaintiff testified briefly as to his injuries. The wheels of the car practically amputated his left arm between the shoulder and elbow. The doctors completed what little work was left for the amputation. The record discloses the bare fact of an amputated left arm and no more. It showed that plaintiff was earning $2.40 per day at the time. No aggravated case of injury is shown. We are of opinion that $8000 would be more nearly right in this case. If therefore the plaintiff will in ten days, remit the sum of four thousand dollars, as of the date of the judgment, the judgment thus left for eight thousand dollars, as and of the date of its original entry, will for said eight thousand dollars, be affirmed. If plaintiff declines to enter such *remittitur* for four thousand dollars, the judgment is reversed and cause remanded. It is so ordered. All concur.