MINA ROBERSON, Administratrix of the Estate of
    JOSEPH A. ROBERSON, Deceased, Respondent,
    v. ST. LOUIS MERCHANTS BRIDGE TERMI-
    NAL RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals. Opinion Filed May 6, 1919.

1. **MASTER AND SERVANT:** Negligence: Duty of Servant: Federal
    Employer's Liability Act: Engaged in Interstate Commerce: Ques-
    tion for Jury.  In an action under the Federal Employer's Liabil-
    ity Act (U. S. Comp. St., Sections 8657-8665,) by the administratrix
    of deceased, his widow, to recover, for the benefit of the widow
    and a minor child of deceased, damages for his death alleged to
    have been caused by the negligence of defendant, etc., while de-
    ceased was in the employ of defendant as switchman and engaged
    in interstate commerce, evidence reviewed and *held* that it was
    proper to submit to the jury the question whether deceased was
    engaged in interstate commerce at the time of his fatal injuries.

2. ———: ———: ———: ———: Assumption of Risk: Contributory
    Negligence.  In such action under the evidence it cannot be said
    as a matter of law that the deceased knew that the car on a
    certain track protruded to such a distance as to render it unsafe
    to attempt to pass between that car and a moving car on another
    track, when he made such attempt, and that he elected to assume
    the risk of being crushed between the cars, but, at most, he may
    be found to have been guilty of contributory negligence, this
    not being a complete defense under section 8659 of the Federal
    Employer's Liability Act, only diminishing the damages.

Appeal from the Circuit Court of the City of St. Louis.
    —*Hon. Rhodes E. Cave,* Judge.

AFFIRMED.

*J. L. Howell* and *W. M. Hezel* for appellant.

The court erred in refusing to give the instruction in the nature of a demurrer to the evidence as requested by the defendant. (a) Because the plaintiff failed to prove that her decedent was, at the time he was injured, engaged in interstate commerce. Ill. C. Railroad Co. v. Behrens, 233 U. S. 473; Erie R. Co. v. Welsh, 242 U. S. 303. (b) Because under the Federal Employers' Liability Act the decedent assumed the risk of passing between the cars at the time and under the existing circumstances. Boldt v. Railroad, 245 U. S. 441; Baugham v. Railroad, 241 U. S. 237; Jacobs v. Railroad, 241 U. S. 229; Slavin v. Toledo, St. L. & W. Ry. Co., 236 U. S. 454; Seaboard Air Line v. Horton, 233 U. S. 492; Southern Ry. Co. v. Gray, 241 U. S. 333; Railroad v. Harris, 247 U. S. 367.

*J. C. Sheppard, Arnot L. Sheppard,* and *Ernest A. Green* for respondent.

The appellant's demurrer to the evidence was properly overruled by the trial court, and the judgment herein should be affirmed. (a) There was abundant testimony in the record justifying the jury in finding that the deceased was engaged in interstate commerce at the time he received the injuries resulting in his death. Pittsburgh, C. C. & St. L. Ry. Co. v. Glinn, 219 Fed. 148; N. Y. Central & Hudson River R. R. Co. v. Carr, 238 U. S. 260; Southern Pac. Co. v. Vaughn, 165 S. W. 888; Oberlin v. Oregon-Washington R. & Navigation Co., 142 Pac. 555; Pedersen v. Del., Lack & West. R. R. 229 U. S. 146; Erie Railroad v. Welsh, 242 U. S. 306; Grand Trunk Ry. Co. v. Knapp, 233 Fed. 950; Louisville, etc., Railroad Co. v. Parker, U. S. Adv. Ops. 1916, p. 4; Delaware & Hudson Co. v. Katz, 233 Fed. 33; Chicago, K. & S. Ry. Co. v. Kindlesparker, 234 Fed. 1; Erie Railroad Co. v. Winfield, 244 U. S. 170; Erie R. Co. v. Krysienski, 238 Fed. 145; Young v. Lusk,

268 Mo. 631. (b) Under the rule as declared by the Missouri courts (which must govern herein) there was no assumption of risk whatever in this case. Fish v. Railroad, 263 Mo. 124; Young v. Lusk, 268 Mo. 640; Williams v. Pryer, 272 Mo. 622; Cross v. C., B. & Q. R. R. Co., 191 Mo. App. 210; Holloway v. M., K. & T. Ry. Co., 208 S. W. 30 (Advanced Sheets, Feb. 19, 1919). (c) Even under the law as declared by the Federal courts, there was no assumption of risk, and, in any event, whether or not the deceased assumed the risk was a question of fact to be determined by the jury; and the trial court did not err in refusing to declare, as a matter of law, that he did assume the risk. Railroad Co. v. Wright, 235 U. S. 376; Cincinnati, N. O. & T. P. Ry. Co. v. Thompson, 236 Fed. 1; Chesapeake & Ohio Railroad Co. v. Proffitt, 241 U. S. 462; Choctaw, etc., Railroad Co. v. McDade, 191 U. S. 68; Schlemmer v. Buffalo, etc., Railroad Co., 220 U. S. 590; Texas & Pacific Ry. Co. v. Harvey, 228 U. S. 319; Gila Valley Ry. Co. v. Hall, 232 U. S. 94.

ALLEN, J.—This is an action prosecuted under the Federal Employers' Liability Act by the administratrix of the estate of Joseph A. Roberson, deceased, who is the widow of the deceased, to recover, for the benefit of said widow and a minor child of Joseph A. Roberson, damages for his death, alleged to have been caused by the negligence of the agents and servants of the defendant while the deceased was in the performance of his duties as a switchman in the employ of defendant and while engaged in interstate commerce. There was a verdict and judgment for plaintiff below in the sum of $6000—$2500 for the benefit of the widow and $3500 for the benefit of the minor child. From this judgment the defendant prosecutes the appeal before us.

The record discloses that Roberson received his fatal injuries on December 25, 1914, at about 3:45 A. M., while engaged as a switchman for defendant in its "Bremen Avenue Yard" in the city of St. Louis, this being a "classification yard," i. e. one used for "break-

ing up" a train or "drag" of freight cars and distributing the cars on various tracks in order to properly group them for delivery to various railroads or to their respective points of destination. This yard contained a main or "lead" track extending north and south, from which other tracks branched off curving slightly and then extending parallel with the lead track; and, it seems, from the tracks thus branching off from the lead track, or from some of them, other tracks in like manner branched off, also becoming parallel with the lead track. The tracks thus branching off extended south, and were entered from the north where they converged. We are particularly concerned with tracks designated as No. 7 and No. 8. These two tracks were west of the lead track. It appears that track No. 7 branched off from the lead track, and that track No. 8, lying west of No. 7, branched off from the latter, extending at first in a slight curve and then becoming parallel with the other tracks.

Roberson, when injured, was a member of a switching crew engaged, during the night, in breaking up a freight train in this yard and distributing the cars to these various tracks. The crew, aside from the engineer and fireman, was composed of one Teas, the foreman of the switching crew, one Greeno, a field switchman, and Roberson who was switchman "following the engine." It was Roberson's duty "to cut the cars when the foreman told him how many cars he wanted in each cut." It was not his duty "to locate the clearance of the cars," but that of the field switchman. The train which this crew was thus breaking up had been brought to this yard from the defendant's "Twenty-third Street Yard," and originally contained forty-one cars. The greater part of these had been distributed upon tracks of the Bremen Avenue yard prior to the casualty. Some time prior to Roberson's injury, perhaps thirty or forty minutes prior thereto, this crew had "kicked in" a Missouri Pacific car on track No. 7. This car was not put in on track No. 7 far enough to afford a safe operating clearance between it

and cars which might be moved on track No. 8. The evidence tends to show that just prior to the time when Roberson was injured the engine was attached to the north end of a string or "drag" of twelve cars on the lead track. The foreman desired to place the two cars at the south end of this drag on track No. 8 and to push back the cars standing upon that track a sufficient distance to allow space for two additional cars thereon. As these cars were moved south on the lead track, Roberson was told by the foreman to make room on track No. 8 for two additional cars, and he thereupon walked south, on the east side of the moving cars, passed between the latter and the Missouri Pacific car standing on track No. 7, and proceeded on south between track No. 7 and track No. 8. It appears that as he passed the north end of the car on track No. 7, he was at or near the north end of the second car from the south end of this drag, i. e. at "the end of his cut," it being the intention to cut off these two last cars. He carried a lantern, and his movements were observed by the field switchman and partly by the foreman. When the cars had been moved south a sufficient distance on track No. 8, they were stopped in response to a signal given by Roberson who then "cut the coupling," cutting off the two cars to be left on track No. 8, and gave a "go ahead signal." Thereupon the cars remaining in this drag began to move north. As these cars moved out of track No. 8 Roberson walked north beside them between the two converging tracks. As he passed the end of the car standing on track No. 7 he was caught between the northwest corner of that car and the last car at the end of the drag and badly crushed. He died about an hour later. It appears that he was caught between the corner of the car on track No. 7 and the middle of the last car in the drag; and that this occurred by reason of the fact that, owing to the curvature of the track, the middle part of a passing car on track 8 swung out farther east than the ends thereof. The witness Greeno said: "When he (Roberson) was walking in he was walking alongside,

about the end of the car; that is, the same car he walked out with. He walked in that way all right and walked past the car on No. 7 about two car lengths. . . . He came out just as he came in, except that he walked in the middle of the car and was walking out towards where the tracks met."

In this connection the witness Teas testified: "The cars are closer in coming out off a curb than in going in, because in coming out you are pulling off of the curb and the other way you are shoving against it. The difference in clearance would depend on how loose the cars are on the frame. The difference would not be a great deal, but it makes enough difference that several times I have been caught, in my experience, getting into a place and couldn't get out."

The case was submitted upon the evidence adduced by plaintiff, defendant offering none. Further reference will be made to certain portions of the evidence in the course of the opinion. The instructions need not be noticed, since the only point made on appeal is that the trial court erred in overruling a demurrer to the evidence interposed by defendant.

Two reasons are assigned by defendant's learned counsel in support of the insistence that the trial court erred in refusing to peremptorily direct a verdict for defendant. The first of these is "that the plaintiff failed to prove that her decedent was, at the time he was injured, engaged in interstate commerce." In this connection it will be necessary to refer to some of the evidence in more detail.

Of the forty-one cars comprising this train brought from the Twenty-third Street yard, it was shown that four were engaged in interstate commerce; and that two were engaged in intrastate commerce. It is impossible to determine from the evidence the nature of the traffic in which any of the remaining thirty-five cars were employed, i. e., whether interstate or intrastate. The two cars shown to have been in intrastate traffic were Erie Car No. 85311 and Rock Island Car No. 3776. These were the last two cars in the

drag which the engine was pulling north at the time of Roberson's injury, the Rock Island car being, it is said, the last car. What were the other cars in this drag does not appear. A train sheet was in evidence containing a list of the forty-one cars in the train when it left the Twenty-third Street yard, and giving the car number of each car, the road from which it was received and that to which it was to be delivered; but from this alone the character of the traffic, whether interstate or intrastate, could not be determined. It was conceded that the Missouri Pacific car on track No. 7 was loaded with interstate freight, but this is perhaps immaterial.

The evidence shows that in this classification yard cars engaged in interstate or intrastate traffic were handled and "classified" indiscriminately, the same engine and the same crew handling both classes of cars. The foreman testified that he would "have no means of knowing what particular cars were attached to the engine at the time Roberson was hurt, what their numbers were, or where they came from, or where they were going;" that "the cars set out on track 8 as a general thing go to the Burlington," and that "some of the points on that road are Kansas City and Chicago, Omaha, and all points in the Northwest."

Under the circumstances we think that it was proper to submit to the jury the question whether the deceased was engaged in interstate commerce at the time of his fatal injuries. The facts involved in Illinois Central R. R. Co. v. Behrens, 233 U. S. 473, relied upon by appellant, differ essentially from those here disclosed. And the decision in Pedersen v. Delaware Lack. & W. R. R. Co., 229 U. S. 146, cited by appellant, appears to lend no support to its contention. Nor do we regard the decision in Erie R. R. Co. v. Welsh, 242 U. S. 303, cited by appellant, as controlling or persuasive authority in its favor. In that case the plaintiff was a yard conductor performing miscellaneous services under orders of a yard master. As stated in the opinion, there was testimony tending to show "that on

the night in question plaintiff, with a yard crew, took a freight car loaded with merchandise destined to a point without the State, and a caboose which so far as appears was not to go beyond the limits of the State, from the Brier Hill yard eastwardly to the 'F. D. yard' in Youngtown, where the freight car was placed upon a siding, so that it might be made up into a train by another crew; that they then took the caboose a short distance farther and placed it upon another siding; that they next took the engine to a water plug and took on water, and then returned with it to the Brier Hill yard; that on this return journey the engine was slowed down near the yardmaster's office, which is at the easterly end of that yard, so as to enable Welsh to report for further orders, all previous orders having been executed; and that the injury was received while he was attempting to alight for that purpose.''

The opinion then continues as follows: ''It was in evidence, also, that the orders plaintiff would have received, had he not been injured on his way to the yardmaster's office, would have required him immediately to make up an interstate train. Upon the strength of this it is argued that his act at the moment of his injury partook of the nature of the work that, but for the accidental interruption, he would have been called upon to perform. In our opinion, this view is untenable. By the terms of the Employers' Liability Act the true test is the nature of the work being done at the time of the injury, and the mere expectation that plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act. [Illinois Central R. R. Co. v. Behrens, 233 U. S. 473, 478.]

''There remains the contention that plaintiff's act in stepping from the yard engine was in completion of his trip to the 'F. D. yard' with the interstate car, and hence was itself an act in furtherance of interstate commerce. This cannot be answered by saying, in the words used *arguendo* by the State Supreme Court (89 Ohio St. 88), that 'he was not then and there em-

ployed in moving or handling cars engaged in interstate commerce.' The question remains whether he was performing an act so directly and immediately connected with his previous act of placing the interstate car in the 'F. D. yard' as to be a part of it or a necessary incident thereto. New York Central & Hudson River R. R. Co. v. Carr 238 U. S., 260, 264; Shanks v. Delaware Lackawanna & Western R. R. Co. 239 U. S. 556, 559. And this depends upon whether the series of acts that he had last performed was properly to be regarded as a succession of separate tasks or as a single and indivisible task. It turns upon no interpretation of the act of Congress, but involves simply an appreciation of the testimony and admissible inferences therefrom in order to determine whether there was a question to be submitted to the jury as to the fact of employment in interstate commerce. The state courts held there was no such question, and we cannot say that in so concluding they committed manifest error."

The case before us is distinguishable from the Erie case upon the facts, in that it does not, in this respect, rest upon proof merely that the deceased expected presently to be called to perform a task in interstate commerce. And the language quoted from the opinion in the Erie case, supra, lends support to the view that the work which the deceased was here performing when injured may properly be regarded as a part of the interstate commerce in which the defendant was engaged.

While it has been held that "the true test is the nature of the work being done at the time of the injury" (see Ill. Cent. R. R. Co. v. Behrens, supra; Erie R. R. Co. v. Welsh, supra) this states the rule in most general terms, and we cannot say that its application to the facts of the case before us must result in sustaining appellant's view of the matter. In New York Central R. R. Co. v. Carr, 238 U. S. 260, in passing upon the question whether an injured employee was engaged in interstate commerce, within the meaning of the Act, it is said: "But the matter is not to be decided by con-

sidering the physical position of the employee at the precise moment of the injury." . . . "Each case must be decided in the light of the particular facts with a view of determining whether, at the time of the injury, the employee is engaged in interstate business, or in an act which is so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof."

In Pittsburgh C. C. & St. L. Ry. Co. v. Glinn, 219 Fed. 148, plaintiff's intestate was killed while a member of a switching crew in the defendant's yards. The pertinent facts are thus stated in the opinion:

"At the time in question, which was during a dark night, the switching crew had taken a cut of cars and distributed them in the yard, and had gone with only their engine outside the yard in order to re-enter upon another track to continue their switching work. . . . At the moment, the switch engine was not hauling any cars, and so the true character of the employment can be determined only by a broader view. The evidence showed that the railway company, in and about these yards, was continuously and indiscriminately hauling intrastate and interstate freight, and that, in this part of the work, no distinction whatever was made between the two classes. Describing the work of this train crew, the yardmaster's clerk said that it handled both intrastate and interstate shipments, that it handled all classes and character of freight and all kinds of cars during its working hours, and that it did the work of transferring and putting into other trains everything that came in for transfer, making no difference or distinction."

After referring to certain decisions of the Supreme Court of the United States, the court said:

"However, we can draw no inference from these and other familiar decisions of the Supreme Court (including the Behrens Case, 233 U. S. 473, 477, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914 C. 163), and the way in which they have interpreted the statute save that liability is created where the service being rendered

is of a general, indiscriminate character, not segregated and tied to shipments within the State (as in the Behrens Case, supra, 233 U. S. 478, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163) but applicable at least as well to the interstate commerce which the carrier is conducting. While it may not be easy in some cases to draw the line between the results of this view and a breadth of construction which would make the statute invalid under the Employers' Liability Cases, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297, yet cases like the present are fairly within the line of validity. They hardly go beyond fixing the burden of proof and declaration that, where the facts show the case may well have been within the statute, the initial burden is satisfied, and it is for the defendant to show the contrary."

In view of the evidence showing that deceased was engaged as a member of this crew in breaking up a train containing both interstate and intrastate cars, which were being handled by the engine and crew indiscriminately, we think that a prima-facie showing was made that he was engaged in interstate commerce at the time of his injury. (Pittsburgh, etc., R. R. Co. v. Glinn, supra) or that he was performing an act "so directly and immediately connected with such business as to substantially form a part or necessary incident thereof." [New York Central, etc., R. R. Co. v. Carr, supra.] We are of the opinion that the evidence adduced made the matter a question for the jury; and it was duly submitted by an instruction given at plaintiff's request. In this connection see also; Erie R. R. Co. v. Krysienski, 238 Fed. 145; Young v. Lusk, 268 Mo. 625, 187 S. W. 849.

## II.

It is a further contention of appellant that the demurrer to the evidence below should have been sustained for the reason that "under the Federal Employers' Liability Act, the decedent assumed the risk of passing

between the cars at the time, and under the existing circumstances.'' We regard it as unnecessary to discuss at length the authorities cited in the briefs in this connection. We are of the opinion that there is no assumption of risk in the case.

The Federal Employers' Liability Act (4 U. S. Comp. Stat. 1913, secs. 8657-8665) provides (sec. 8660) that in an action to recover damages for injuries to or for the death of an employee, such employee shall not be held to have assumed the risk of his employment in any case where the violation by the carrier of any statute enacted for the safety of such employees contributed to such injury or death. In all other cases the defense is available if warranted by the facts. [Young v. Lusk, 268 Mo. 625, 187 S. W. 849; Fish v. Railroad, 263 Mo. 106, 172 S. W. 340.] The Supreme Court of this State has held that, as to the class of cases in which the doctrine of assumed risk may be invoked under the Federal Employers' Liability Act, the matter is one to be determined by the common law doctrine of assumption of risk prevailing in this state and as understood and applied by our courts. [Fish v. Railroad, supra; Young v. Lusk, supra; Williams v. Pryor, 272 Mo. 613, 200 S. W. 53.] But we do not base our holding herein upon the ground that under the decisions last cited plaintiff cannot be held to have assumed a risk arising from negligence attributable to the master, as is the rule of decision in this State, but upon the ground that, under the law as enunciated by the Supreme Court of the United-States, the danger arising from the position in which the car on track No. 7 had been negligently placed, perhaps thirty or forty minutes prior to the casualty, was not a risk assumed by the plaintiff; that the matter is not one to be classed under the subject of assumed risks, but that the question in this connection is whether the deceased, having passed this point a few minutes before his injury, was guilty of contributory negligence in attempting to pass between these cars when injured.

In Yazoo & Mississippi Valley R. R. Co. v. Wright, 235 U. S. 376, the Supreme Court of the United States, through Mr. Justice WHITE, said:

"Whatever may be the difficulty of distinguishing in many cases between the application of the doctrine of assumption of risk and the principles of contributory negligence, that there is no such difficulty here is apparent since the facts as stated absolutely preclude all inference that the engineer knew or from the facts shown must be presumed to have known that the coal cars were protruding over the track on which he was moving and deliberately elected to assume the risk of collision and great danger which would be the inevitable result of his continuing the forward movement of his train.

"The impossibility of deducing assumption of the risk from the facts stated is cogently demonstrated by the arguments advanced to establish that the risk was assumed. Thus it is urged that as in a railroad yard there was danger to arise from the protrusion of cars negligently placed by employees of the company, a danger which the engineer must have known might arise, therefore he assumed the risk of such danger. And again the argument is that even although the engineer did not know of the protruding cars and therefore did not consciously incur the great risk to result from the collision, yet as by proper precaution he could have discovered the fact that the cars were protruding, he must be considered to have assumed the risk which resulted from his want of care. But both these arguments have no relation to the doctrine of assumption of the risk and only call for the application of the principle of contributory negligence or of fellow servant."

From the evidence in this record it cannot be said, as a matter of law, that the deceased knew that the car on track 7 protruded to such a distance as to render it unsafe to attempt to pass between that car and the moving car on track 8, when he made such attempt, and that he elected to assume the risk of being crushed

between the cars. At most, he may be found to have been guilty of contributory negligence, but this, of course, is not a complete defense under the Federal Employers' Liability Act. Section 8659 of the Act, supra, provides that "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." And this matter was submitted to the jury by an appropriate instruction offered by plaintiff, of which defendant does not complain.

It follows that the judgment should be affirmed, and it is so ordered. *Reynolds, P. J.,* and *Becker, J.,* concur.