Reporter's Note: The above record, Stetina v. Bergstein, was quashed by Supreme Court on certiorari. See 227 S. W. 47.

## WILHELMINE LAMPE, Respondent, v. ST. LOUIS BREWING ASSOCIATION, Appellant.

St. Louis Court of Appeals. Opinion Filed May 4, 1920.

1. **DEPOSITIONS: Taken in Another Case: Same Parties and Issues: Admissibility.** In order that a deposition taken in one case may be read in another, the parties must be the same, or in privity, and the issues must be the same, but there is no necessity of mutuality for the use of the depositions.

2. **DEATH BY WRONGFUL ACT: Negligence: Death of Husband: Right of widow or Minors to Sue.** Where the husband was injured by negligence, the right of action to sue for the wrongful act was

first in the husband, and if he died from his injuries that right of action is transmitted by section 5425, Revised Statutes 1909, to the wife absolutely, provided she appropriate it and sue within six months, and, upon her failure to appropriate it, the right to sue then vests in the minor children.

3. **DEPOSITIONS: Action by Widow: Husband's Deposition in Previous Action: Privity: Admissibility.** Where the husband died as a result of personal injuries sustained in his master's employment, privity existed between the deceased husband and his widow by virtue of section 5425, Revised Statutes 1909, transmitting to her the husband's right of action, and hence the husband's deposition taken in a previous case brought by him against the master, was admissible in the action by the wife to recover compensation for his death.

4. ————: ————: ————: ————: **Admissible Though Measure of Damages Differed.** Likewise, in an action by a widow to recover for the wrongful death of her husband, the deposition of the husband taken in a previous action by him to recover for the injuries which subsequently resulted in his death was not inadmissible because the measure of damages in the cases was different.

5. **WITNESSES: Depositions: Action by Widow: Deposition of Deceased Husband: Death Removed Disability: Admissibility.** In an action by a widow to recover for the wrongful death of her husband, the desposition of the husband taken in a previous action by him to recover for the injuries which subsequently resulted in his death was admissible, the husband being dead the relation of husband and wife did not exist at the time of the trial    .

6. **MASTER AND SERVANT: Injuries to Servant: Negligence: Master Furnishing Mule Known to Be Vicious: Risk Not Assumed.** In action by a widow to recover for the wrongful death of her husband, who was crushed and injured while attempting to harness his employer's mule so that he subsequently died, and the evidence shows that the mule furnished deceased by his employer became dangerous and vicious about a year before deceased was injured, and during a period of six months before the injury the deceased often complained to his employer's manager about the mule and asked him to get rid of the animal and furnish him another, such evidence made a prima-facie case of negligence against the master, which negligence was not assumed by the servant.

7. ————: ————: ————: ————: **Contributory Negligence: Mere Knowledge of Defects Will Not Defeat Recovery.** Where deceased was an experienced handler of mules and worked with the animal for a year without being injured, and others had done so without serious results, and reasonable minds might well' differ as to whether the deceased, under the circumstances, should have refused

to further work with the mule, the mere knowledge of the viciousness and meanness of the mule will not defeat a recovery and does not convict the deceased of negligence beyond an inference to the contrary.

8. ———: ———: ———: ———: ———: **Question for the Jury.** Where the mule was dangerous when approached from either side or angle, especially when one attempted to harness him, this does not bring the case within the rule that deceased was guilty of contributory negligence as a matter of law in selecting a dangerous way to perform his duties when there was an apparent safe way, and *held* the case was for the jury.

9. **TRIAL PRACTICE: Testimony of Medical Witness: Hypothetical Question Not Based on Facts Proven: Harmless.** In an action by a widow to recover for the death of her husband resulting from injuries received in being crushed against the stall by a vicious mule belonging to his employer, a hypothetical question put to a medical witness based on the assumption that the broken rib tore and injured the lungs of deceased, and that the blow which caused the fractured rib could cause an arrested case of tuberculosis to become active, *held* harmless error in view of the answer to a previous question.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. Thomas L. Anderson*, Judge.

AFFIRMED.

*Jourdan, Rassieur & Pierce* for appellant.

(1) The court erred in permitting the plaintiff to read to the jury the deposition of her deceased husband, which had been taken in a suit brought by him against the defendant. Starkie on Evidence, 412-418; Womach v. St. Joseph, 201 Mo. 467-468; Walker v. Philadelphia, 195 Penn. State 168; Seleck v. Janesville, 104 Wis. 570; Borders v. Barber, 81 Mo. 636, 644; Leslie v. Rich Hill C. M. Co., 110 Mo. 31; Bank v. Thayer, 184 Mo. 61, 99; Murphy v. Railway, 31 Hun, 358; Nelson v. Harrington, 72 Wis. 591, 606; Metropolitan Street Railway Co. v. Gumby, 99 Fed. 192; Fearn v. Ferry Company, 143 Pa. St. 122; Harrell v. Railway, 186 S. W. 677; Strode v. Railway, 197 Mo. 616; Holman v. Bachus, 73 Mo. 49,

51; 9 Am. & Eng. Enc. of Law, 357; Bloomington v. Osterle, 139 Ill. 120; Harrington v. Harrington, 2 How (Miss.) 701; Peery v. Moore, 24 Mo. 285; Bryan v. Malloy, 90 N. C. 508; Brown v. Johnson, 13 Gratt. 644, 649; Miller v. Gillespie, 54 W. Va. 450; Commissioner v. McWhorter, 2 McMullen 254; Walterhouse v. Walterhouse, 130 Mich. 89; Morgan v. Nicholl, L. R. 2 C. P. 117; Hovey v. Hovey, 9 Mass. 216; Brandon v. Mullenix, 11 Heisk. 446. (2) The court erred in refusing to sustain a demurrer to the evidence since the deceased assumed the risk of his employment and was guilty of such contributory negligence as to bar a recovery. Smith v. Forester-Nace Box Co., 193 Mo. 715, 737; Stutxke v. Consumers Ice & Fuel Co., 156 App. 1-11; Milby & Dow Coal & Mining Co. v. Balla, 18 L. R. A. 695; Douglas v. Scandia Coal Company, 141 N. W. 960; Clark v. Railroad, 179 Mo. 66; Armington v. Providence Ice Co., 82 Atl. 263; Moore v. American Express Co., 172 S. W. 416; Knorpp v. Wagner, 195 Mo. 637, 666. (3) The court erred in permitting Dr. Henske to give an opinion as to the possible effects of a broken rib tearing and injuring the lungs of the deceased and causing tuberculosis to develop, since there was no evidence to support such an assumption. Senn v. Railroad, 108 Mo. 142; Culbertson v. Railroad, 140 Mo. 35; Mammerburg v. Railroad, 62 Mo. App. 563; Heinzel v. Railroad, 182 Mo. 528.

*Holland, Rutledge & Lashly* and *Joseph Kane* for respondent.

(1) The court committed no error in receiving the deposition of the deceased husband of plaintiff which was taken in a suit brought by the decedent for the personal injuries from which he afterwards died. Such cause of action is perpetuated by the statute and transmitted to his widow upon his death. Sec. 5426, R. S. 1909; Strode v. St. Louis Transit Co., 197 Mo. 616; Harrell v. Railroad Co., 186 S. W. 677; Parson v. Parson, 45 Mo. 265; Howard v. Strode, 242 Mo. 210. (a) The court did not

overrule the objection to the deposition on any court rule ground at all, but upon the merits of the objection.   (b) Even if the court had assigned a wrong reason for a right ruling it is no ground for a reversal.   Chlanda v. Transit Co., 213 Mo. 262; State v. Rose, 271 Mo. 25; State v. Kaiser,124 Mo. 651; State ex rel. v. Finn, 100 Mo. 429; Green v. St. Louis, 106 Mo. 454; Bissell v. Warde, 129 Mo. 439; Egger v. Egger, 225 Mo. 116; Green v. Railroad Co., 211 Mo. 18.  (2) The court did not err in refusing to sustain a demurrer to the evidence in this case because (a) under the law of Missouri there is no assumption of risk where the negligence of the master is involved;   (b) whether the servant was guilty of contributory negligence is a question for the jury. State ex rel. v. Reynolds et al., 200 S. W. 58; Williams v. Pryor, 200 S. W. 53; Patrum v. Railroad, 259 Mo. 121; Curtis v. McNair, 173 Mo. 270; Strother v. Milling Co., 261 Mo. 23; Lohmeyer v. Cordage Co., 137 Mo. App. 624.  (a.) The deceased was not obliged under the law to quit his job and begin a search for employment as soon as a danger appeared, but was entitled to rely upon the promise of his employer that he would send the dangerous mule away.   Warner v. Railroad, 62 Mo. App. 184; Huhn v. Railroad, 92 Mo. 440; Harris v. Railroad, 146 Mo. App. 524; Garaci v. Construction Co., 124 Mo. App. 709; Blundell v. Miller Elevator Co., 189 Mo. 552; Booth v. Railroad, 76 Mo. App. 516, 518, 519; Minnier v. Railway Co., 167 Mo. 99, 114; Robbins v. Mining Co., 105 Mo. App. 78, 82. (3) No error was committed in allowing Dr. Henske to testify to all of the causes of consumption.   The cases cited by appellant under its point 3 are all railroad stoppage cases, which are distinguished from injury cases, where the doctor saw the patient, examined and treated him, and testified from his own observation as well as hypothetically.   Millirons v. Railroad, 176 Mo. App. 39, 49; Patterson v. Springfield Traction Co., 178 Mo. App. 250, 260.   (4) This judgment ought to be affirmed because it is for the right party, is modest in amount, and upon the whole record the plaintiff ought to

win. Shinn v. Railroad Co., 248 Mo. 181, 182; Peterson v. Transit Co., 199 Mo. 344; Schnepbach v. Gas Co., 232 Mo. 611; Fox v. Windes, 127 Mo. 514; Noble v. Blount, 77 Mo. 239; Haehl v. Railroad Co., 119 Mo. 344; McFarland v. Heim, 127 Mo. 335; Sherwood v. Railroad Co., 132 Mo. 339, 346.

BIGGS, C.—This is a master and servant negligence case. The action is maintained by Wilhelmine Lampe as widow of Frederick Lampe, the deceased employee of the defendant, to recover under the Compensatory Death Act the sum of $10,000, for the death of her husband alleged to have been caused by the defendant's negligence.

The verdict of $2,000 is a modest one if a liability was established.

The plaintiff's husband was a driver of and in charge of a team of mules furnished and owned by the defendant and which was used for the purpose of delivering defendant's product to various saloons in St. Louis and St. Louis County.

The relation of master and servant between the husband and the defendant is admitted. The negligence charged is, that on and prior to June 30, 1914, Frederick Lampe was in the employ of the defendant as a driver of a team of mules attached to a wagon, and that it was a part of his duties to care for and harness the said mules, and that one of said mules was vicious, wild and unmanageable, and that it would jump, kick, buck and lunge viciously without any provocation and without any warning, and that at said times the defendant knew, or by the exercise of ordinary care would have known that the said mule was as stated liable and apt to become violent and vicious and to kick, jump, buck, lunge and thus injure anyone coming near or around it, and that it was dangerous for anyone to work near or about it: and that defendant was guilty of negligence in requiring

plantiff's husband to work near and about said mule when the defendant knew, or by the exercise of ordinary care would have known, of such dangerous traits in said mule, and that it was not reasonably safe for plaintiff to work with or about said mule; that on the morning of June 30, 1914, while plaintiff's husband in the performance of the ordinary duties of his said employment, entered the stall provided by the defendant to put the harness on the mule, said mule suddenly, violently and viciously bucked and jumped or lunged against plaintiff, crushing him against the side of the stall with such force that he was bruised about the body, and one of his ribs was broken and shattered and driven through the linings into the tissues of his lung, lacerating, tearing and cutting the lung, and causing an abcess and hemorrhage, and that as a direct result of said injury the wasting and incurable disease of consumption, or tuberculosis of the lungs developed, as a direct result of which said Frederick Lampe died on October 20, 1914, and that said injury, disease and death were directly caused by said negligence on the part of the defendant.

The defense was a general denial and a plea of contributory negligence, in that the death of the plaintiff's husband was caused by his own carelessness and negligence in kicking the mule and beating him with a rubber hose attached to a stick.

On this appeal, duly perfected by the defendant, error is complained of as follows:

First.  The court erred in permitting the plaintiff to read to the jury the deposition of her deceased husband which had been taken in a suit brought by him against the defendant.

Second.  The court erred in refusing to sustain a demurrer to the evidence, since the deceased assumed the risk of his employment and was guilty of such contributory negligence as to bar a recovery.

Third.  The court erred in permitting Dr. Henske to give an opinion as to the possible effects of a broken

rib tearing and injuring the lungs of the deceased and causing tuberculosis to develop, since there was no evidence to support such an assumption of fact.

## I.

As to the specification of error on the admission in evidence of the deposition, it appears that before the trial in the circuit court the plaintiff, after notice to the defendant, caused to be filed in the cause the deposition of her deceased husband which had been taken in a suit brought by him against the defendant on account of the same injuries that is here alleged to have caused his death. The deposition was taken before a Special Commissioner on behalf of the plaintiff in the prior cause.

On the second day after the filing of the deposition, the defendant filed a motion to suppress and to strike same from the files because the deposition was taken in another and different lawsuit; because the parties were different, the cause of action and issues were different, and because the deposition had not been taken under the statute relative to the perpetuation of testimony. This motion was in due course overruled by the court over the objections and exceptions of the defendant. When the deposition was offered at the trial the same unavailing objections were made by defendant and its exception to the adverse ruling timely saved.

The admission of the deposition is vital to plaintiff's cause, as without it the jury could not have found a verdict for plaintiff.

The defendant contends that the conditions whereby a deposition in one case may be read in another are these:

1. The parties must be the same or in privity.

2. The issues must be the same.

3. There must be a mutuality for the use of the deposition so that it could be offered in evidence by either or both parties, since a deposition on file, if admissible at all, must be available to both sides.

The necessity of mutuality for the use of the deposition has been repudiated by our Supreme Court in the

case of Harrell v. R. R., 186 S. W. 677 (not officially reported). The court in that case, after approving the rule laid down in Wigmore on Evidence (sec. 1388) which says the element of mutuality or reciprocity is not necessary, states:

"This seems unanswerable. The idea that a deposition taken and filed by a party against his opponent could not be read by the opponent found favor in an early day in the Supreme Court of Massachusetts in Dana v. Underwood, 19 Pick. 99, where it received the sanction of Chief Justice Shaw. It has no reason in modern practice, nor had it any reason then, as is shown by Wigmore at section 1389 of his work already cited."

This elminates the question of mutuality and it remains to be determined whether the parties are the same or in privity within the meaning of the law and whether the issues are substantially the same. The suit in which the deposition was taken was filed by Fred Lampe, the plaintiff's husband, to recover for his injuries on account of the alleged negligence of the defendant in furnishing him with a vicious mule. This present suit as stated is brought by the widow under the statute, section 5425, Revised Statutes 1909, to recover for his alleged wrongful death, based upon the same acts of negligence. As far as the acts of negligence on the part of the defendant and the acts of contributory negligence are concerned, the issues in both cases are identical. In the first case the question was not involved as to whether the present plaintiff was the wife of Fred Lampe, and the measure of damages in the cases are not the same. On the vital questions as to whether the defendant was negligent and whether Lampe was guilty of contributory negligence, the same issues were involved, and it appears that defendant at the taking of the deposition appeared and fully cross-examined the witness.

It is now the settled law of this State that the right of action to sue for the wrongful act was first in the husband, and if he died from his injuries, that right of action is transmitted by the statute, section 5425, supra, to the

wife absolutely, provided she appropriate it and sue within six months. Upon her failure to appropriate it the right to sue then vests in the minor children. The cause of action is the same. [Proctor v. Railroad, 64 Mo. 112; White v. Maxey, 64 Mo. l. c. 552; Strode v. Transit Co., 197 Mo. 616, 95 S. W. 851.]

In the Harrell case, supra, a suit was filed by the widow against the railroad to recover for the negligent death of her husband, and in that suit the defendant took the deposition of one Austin which was filed in the cause. Afterward the widow was non-suited because she did not sue within the time limited by the statute. Thereafter the widow as next friend filed suit on behalf of her minor children, and after due notice filed the Austin deposition in the second suit. The defendant in that case raised practically the same objections to the admission of the deposition as are urged by the defendant in the present case. The Supreme Court held the deposition admissible, and said (186 S. W. 678):

"That the cause of action is the same in both suits there can be no doubt. It is simply the wrong statutory redress for which the plaintiffs are seeking."

At page 679 the court further says:

"So in the case before us the cause of action is the wrongful act of the defendant in killing the deceased, and that cause of action is involved in every suit brought for the recovery of the damages growing out of it. The same question arises in every legal proceeding for relief. The title of the applicant is a matter incident to all  . . .

"Every reason that justice and equality suggest is alike applicable in either case. The right comes to both in its entirety from the same source. The cause of action is the same in its entirety, the defendant is the same, and the defense is the same against the children as it would have been against the injured party, and we can see no reason why a deposition taken by the defendant upon the merits should not be equally available to each successive plaintiff."

We have here the same cause of action and the same subject-matter in the two suits, but the parties are not identical. Under the test the parties must be the same or in privity. There is much more reason for holding that the deceased husband and the widow are in privity than to hold, as was evidently done in the Harrell case, that privity existed between the widow and the minor children, because the cause of action does not come to the children from the widow, but from the father, the mother having failed to appropriate it within the six months. We think privity existed between the deceased husband and the widow by virtue of the statute. Fred Lampe had a cause of action on account of the negligent act of defendant, which by the statute was given and transmitted to his widow upon his death. They are privies in law and might be classed as privies in estate.

Defendant argues that the issue of whether Fred Lampe and the plaintiff were married is in this case and was not in the prior case. That question could hardly be said to be a material issue, as the defendant did not attempt to show that she was not his widow. Besides this, it appears that in the cross-examination of Fred Lampe at the taking of the deposition he was interrogated by the defendant on the subject and he testified that he was married to the plaintiff. It is true that the question was not involved in the prior suit, but nevertheless the defendant was permitted to cross-examine the witness on the subject. In the Harrell case the question as to whether the plaintiffs were the children of the deceased was involved, while such an issue was not involved in the prior suit brought by the widow and in which the deposition was taken, yet the Supreme Court admitted the deposition.

Likewise we do not think the deposition should be inadmissible because the measure of damages in the cases are different. The defendant contended in Lampe's case that his condition was not due to the injury he received, but was due to tuberculosis. In the present case defendant contends that Lampe died of tuberculosis and his death was not caused by his injuries. At the taking

of the deposition Lampe was fully cross-examined on the subject.

On the question of whether the issues in the two causes must be the same, Mr. Wigmore in his work on Evidence (sect. 1387) says:

"The issue on the occasion when the former testimony or deposition was given must have been substantially the same, for otherwise it cannot be supposed that the former statement was sufficiently tested by cross-examination upon the point now in issue. Conversely, it is sufficient if the issue was the same, or substantially so with reference to the likelihood of adequate cross-examination, because the opponent has thus already had the full benefit of the security intended by the law. The general rule in this shape is nowhere disputed. But there is naturally much variance shown in the strictness of its application in specific cases. It is enough to suggest that the situation is one that calls for common sense and liberality in the application of the rule, and not a narrow and pedantic illiberality. On the whole, the judicial rulings show a liberal inclination to receive testimony already adequately tested."

On the question as to whether the parties must be the same or in privity, the same author at section 1388 says:

"Thus the requirement of identity of parties is after all only an incident or corollary of the requirement as to identity of issue. It ought, then, to be sufficient to inquire whether the former testimony was given upon such an issue that the party opponent in that case had the same interest and motive in his cross-examination that the present opponent has."

Defendant also argues that the deposition stands in place of the testimony of the witness, and that as Lampe was the huband of plaintiff he, if present, would be an incompetent witness in her behalf. This is true if he were living and the relation existed. It is also true that if he were living the plaintiff would not have a cause of action of any kind.

When you consider the reason of the rule of incompetency of the husband or wife to testify for each other, it is evident that they are not incompetent in the event the relation did not exist at the time of the trial except as to confidential communications. Mr. Greenleaf (1st Greenleaf on Evidence, sec. 333) says, the ground of the rule rests upon the notion of the untrustworthiness of a spouse testifying; that each will be likely to favor the other; also to protect the sanctity of the marriage relation on grounds of public policy.

It is the law of Missouri that a divorce removes the disability of a husband or wife as a witness except as to confidential communication. [Toovey v. Baxter, 59 Mo. App. 470; Long v. Martin, 152 Mo. 668, 54 S. W. 473; McCloskey v. Pub. Co., 163 Mo. 22, 63 S. W. 99; Howard v. Strode, 242 Mo. l. c. 227, 147 S. W. 792.]

In view of the foregoing and what the Supreme Court says in the Harrell case, we think the deposition in the present case was admissible, and rule this specification of error against the defendant.

## II

Defendant next contends that the deceased, Fred Lampe, assumed the risk of the dangers of his employment, and under the evidence was guilty of contributory negligence as a matter of law.

As to the question of assumption of risk, plaintiff's evidence tended to show that the mule furnished him by the defendant became dangerous and vicious about a year before the deceased was injured; that during a period of six months before the injury the deceased often complained to defendant's manager about the mule and asked him to get rid of the animal and furnish him another. This evidence made a prima-facie case of negligence against the master, which negligence under the law of this State is not assumed by the servant. In Williamson v. Union Electric Light & Power Company (not yet officially reported), the Supreme Court states the rule thus:

204 M. A.—25

"The doctrine of this court is that an employee only assumes such risks, in respect of the place where he is put to work, as are incident to the service after the employer has performed his duty by using care to provide a place of reasonable safety.' And although the danger of the place may be obvious, if this is due to lack of care on the part of the master to furnish a safe place, the servant does not assume the risk. Adjudications to the contrary may be found, but for a long time the rule of decision of the courts of this state has been as stated. [Williams v. Pryor, 272 Mo. l. c. 613; 200 S. W. 53; Fish v. Railroad, 263 Mo. 106, 112, 172 S. W. 340; Curtis v. McNair, 173 Mo. 270, 73 S. W. 167.]"

Whether the deceased was guilty of contributory negligence as a matter of law, in continuing to work with the mule without a promise on the part of the defendant to furnish another animal, must be tested by the rule now thoroughly approved and stated in the case of George v. Railroad, 225 Mo. l. c. 411, thus:

"Where the instrumentalities with which or the place where the servant is required to perform services are so glaringly defective and dangerous that a man of ordinary prudence would not use or occupy them, the master cannot be held responsible for injuries resulting from their use or occupancy, even though those defective conditions were caused by the negligence of the master. In such cases the servant's contributory negligence and not his assumption of risk would prevent his recovery. But if the servant incurs the risks of place or machinery, which though dangerous are not so much so as to threaten immediate injury, or where it is reasonable to suppose that they may be safely used or occupied with great skill and care, the mere knowledge of the defects on the servant's part will not defeat a recovery. Negligence on the part of the servant in such cases does not necessarily arise from his knowledge of the defect, but is a question of fact to be determined by the jury from such knowledge and all other facts and circumstances shown by the evidence." (citing cases).

Deceased was an experienced handler of mules, and while his testimony makes a strong case of viciousness and meanness on the part of the mule, it appears that he worked with the animal for a year without being injured and that others had done so without serious results. Besides, deceased testified as follows: "Q. You told him (referring to defendant's manager) you were not able to drive the mule yourself? A. No, sir. Q. You thought you could drive him all right? A. Why, sure; I don't throw up a job so easy; I stick." Reasonable minds might well differ as to whether the deceased under the circumstances should have refused to further work with the mule. Viewing the evidence as a whole we have concluded that it does not convict the deceased of negligence beyond an inference to the contrary. Nor does the evidence bring the case within the rule that plaintiff was guilty of contributory negligence as a matter of law, by reason of the fact that he chose a dangerous way to perform his duties when there was an apparent safe way, in that he approached the mule on the left side, when if he had gone up to the mule on the right side the mule would not have objected. There is considerable evidence in the record to the effect that the mule was dangerous when you approached him from either side or angle, especially when one attempted to harness him, which deceased was doing when he was injured.

We conclude this was a case for the jury under the rules laid down in the authorities above referred to and the following: Warner v. Railroad, 62 Mo. App. 191; State ex rel. v. Reynolds, 200 S. W. 1. c. 57, 58; Schultz v. St. Louis Malleable Castings Company, 196 S. W. 52; Patrum v. Railroad, 259 Mo. 1. c. 124, 168 S. W. 622; Fisher v. Railroad, 263 Mo. 106, 172 S. W. 340; Kuhn v. Lusk, 219 S. W. 638, 1. c. 643 (Supreme Court); Jewel v. Bolt & Nut Company, 231 Mo. 177, 1. c. 199, 132 S. W. 703.

## III.

Lastly, defendant asserts that the court erred in permitting Dr. Henske to give an opinion as to the possible effects of a broken rib tearing and injuring the lungs of the deceased, and causing tuberculosis to develop, since there was no evidence to support such an assumption.

The controversy as developed in the case was whether the injury that Lampe received by being squeezed against the stall by the mule caused an arrested case of tuberculosis to become active and was thereby the direct or contributing cause of his death. It is uncontradicted that some nine months previous to the accident Lampe had tuberculosis, but there was evidence that under treatment he had regained his normal weight to within five pounds and was performing at the time he was injured his regular work as a driver of defendant's wagon. He was injured on June 30, 1914, and was confined to his bed for about three weeks. He was up and down after that, but grew gradually worse and died of tuberculsois on October 20th following.

Dr. Henske was permitted over defendant's objection to answer the following questions: Q. In case a crushing blow, such as a heavy mule might make crushing a man against a stall, assuming the other facts I assumed in the other question, and assuming a patient of the kind you saw Mr. Lampe to be could the fracture of the fifth rib with that sort of crushing pressure, could it operate to injure the tissue of the lung and perhaps cause bleeding of an internal wound to the lung? Might such a fracture cause an internal puncture or interfere with the tissue of the lung? A. It is possible that it could, yes. Q. Suppose it did tear or disturb this tissue of the lungs in a case of arrested tuberculosis what would be the possible result of that tear or disturbance? A. Why, yes; it is possible that it could do that. Q. What would be the result of it? A. Well, that all depends on the course of the case. Q. Well assume, the

sort of a case that I hypotheticated to you, wherein the patient had regained almost a normal condition at the time this blow was received, could it operate to set up an active process in the disease or not? What do you say, doctor; could it? A. Yes, it could.

It is elementary that the opinion of the expert physician on his examination by plaintiff must be based on facts in the evidence, given to him in a hypothetical question or from what he knows from an examination of the patent. The hypothetical question must not assume facts not in evidence.

There was evidence both ways as to whether Lampe sustained a broken rib by being squeezed by the mule. Dr. Henske and other doctors who examined deceased found a callous place on his fifth rib, which they testified indicated a recent fracture of the rib. An X-ray picture failed to show any evidence of a fracture. It is true there is no evidence in the record on which to base the assumption that the broken rib tore and injured the lungs of the deceased, and we think the court should not have permitted the doctor to answer the question based on that assumption. While this was error, it was not reversible error, and we do not think the answer harmful to the defendant because Dr. Henske just previously had testified in answer to another question which merely assumed that the rib was broken and did not contain the assumption that the lung was torn and injured, that the blow which caused the fractured rib could cause an arrested case of tuberculosis to become active and shorten the life of Fred Lampe. For this reason we do not think the error constituted reversible error.

It is recommended by the Commissioner that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of BIGGS, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Reynolds, P. J., Allen* and *Becker, JJ.,* concur.