FLORENCE OXFORD and WAYNE L. OXFORD v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.—52 S. W. (2d) 983.

Division One, September 3, 1932.

*E. T. Miller* and *Ward & Reeves* for appellant.

*Hal H. McHaney* and *Harrison, Smith & Taylor* for respondents.

STURGIS, C.—The plaintiffs are the widow and only child of A. C. Oxford, deceased, and bring this suit for damages for his death caused by one of defendant's trains coming in collision at a public road crossing with the automobile in which the deceased was riding while attempting to cross defendant's railroad track at grade. The collision and death of A. C. Oxford occurred on November 30, 1925, in Mississippi County, Arkansas, at a crossing about a half mile north of the station of Archillion, in that county. The train in question was a southbound passenger train, and the deceased was driving his automobile going west on the east and west public road, crossing the railroad track at right angles. The collision occurred a little before sunset on a clear day. Other persons riding in the automobile were also killed at the same time.

This suit was brought in the Circuit Court of Dunklin County,

in'this State, on June 4, 1927, and was tried in that court at the February Term, 1928, resulting in a verdict and judgment for plaintiffs for $10,000, and defendant has duly appealed.

As giving plaintiffs a cause of action, the petition alleges negligence on the part of defendant in failing to ring the bell or sound the whistle in approaching this crossing, in failing to keep a vigilant lookout for persons using the crossing, and in failing to exercise care to prevent the injury to deceased after his peril could have been discovered. The answer denied defendant's negligence and set up deceased's negligence as being the sole cause of his injury and as contributing thereto.

As this case was brought and tried in this State, while the death occurred and the cause of action therefor accrued in Arkansas, the plaintiffs plead as part of their cause of action certain statute laws of Arkansas relating to death by wrongful acts and especially when caused by railroads; and also the construction placed on such laws by the Supreme Court of that state as governing the trial of this case here.

█ It is conceded that a statute of Arkansas gives a cause of action such as is sued on here and that the plaintiffs are the beneficiaries and proper parties plaintiff. It is properly alleged in the petition, and when so alleged, we take judicial notice thereof, that the statutes of Arkansas provide:

"Sec. 8562: All railroads which are now or may be hereafter built and operated in whole or in part in this State shall be responsible for all damages to persons and property done or caused by the running of trains in this State."

Also the following statute of that State is pleaded:

"Sec. 8568: It shall be the duty of all persons running trains in this State upon any railroad to keep a constant lookout for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of any employee of any railroad to keep such lookout, the company owning or operating any such railroad shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout, notwithstanding the contributory negligence of the person injured, where, if such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care after the discovery of such peril, and the burden of proof shall devolve upon such railroad to establish the fact that this duty to keep such lookout has been performed."

Plaintiffs allege a violation of this statute by the persons operating the train in question as it approached the crossing where deceased was killed, in that the operators of the train failed to keep a con-

stant lookout for persons and property on its tracks at this crossing; and also that even if the deceased was negligent in going on said crossing when he did, yet the trainmen could have discovered the deceased's peril in time to have prevented his injury by using reasonable care after discovering his peril.

Also this statute of Arkansas is pleaded:

"Sec. 8568a: A bell of at least thirty pounds weight, or a steam whistle, shall be placed on each locomotive or engine, and shall be rung or whistled at the distance of at least eighty rods from the place where the said road shall cross any other road or street, and be kept ringing or whistling until it shall have crossed said road or street, under a penalty of two hundred dollars for every neglect, to be paid by the corporation owning the railroad, one-half thereof to go to the informer and the other half to the county; and the corporation shall also be liable for all damages which shall be sustained by any person by reason of such neglect."

The violation of this statute is pleaded in that the operators of the train failed, as the train approached this crossing, to either ring the bell or sound the whistle, beginning eighty rods from the crossing and continuing to do so till it passed such crossing.

As defendant's answer sets up the negligence of deceased in driving upon the railroad crossing in plain view of the approaching train then near at hand, the plaintiffs in reply pleaded the law of Arkansas as to contributory negligence, as follows:

"Sec. 8575: In all suits against railroads, for personal injury or death, caused by the running of trains in this State, contributory negligence shall not prevent a recovery where the negligence of the person so injured or killed is of less degree than the negligence of the officers, agents or employees of the railroad causing the damage complained of; provided, that where such contributory negligence is shown on the part of the person injured or killed, the amount of recovery shall be diminished in proportion to such contributory negligence."

█ On the trial of this case the plaintiffs proved their relationship to the deceased and that on the day mentioned he was killed at the crossing in question by the southbound passenger train colliding with his automobile as he was attempting to cross defendant's railroad track. The plaintiffs used but one witness to prove nothing but the facts connected with the killing of the deceased by the train, relying on this as making a prima-facie case under the Arkansas statute first above quoted. Such is the construction of this statute in St. Louis, Iron Mountain & Southern Ry. Co. v. Evans, 80 Ark. 19, and Kansas City Southern Ry. Co. v. Drew, 103 Ark. 374. Thereupon the defendant assumed the burden of proving its compliance with the statute law of Arkansas in keeping a constant lookout for persons and property on the track, and in sounding the whistle and

ringing the bell as the train approached this crossing; also that the persons operating the train did not and could not discover the peril of deceased in time to have avoided the collision. Then there was some rebuttal evidence introduced by plaintiffs.

The evidence disclosed that the train in question, consisting of the engine and seven coaches, was running at the rate of fifty to fifty-five miles per hour; that the country was practically level; that the deceased was driving west toward this crossing and after extricating his automobile from a mud hole some two hundred yards east of the crossing, proceeded westward toward the crossing at about ten miles per hour; that the railroad track was elevated some four feet above the surface; that there was practically nothing to obstruct the view of the automobile by the trainmen or of the train by the deceased and those with him in the automobile. There were a few scattered and rather small trees without leaves thereon at the time and some weeds intervening, but the former were too scattered to form much obstruction to seeing the train from the automobile, and *vice versa*, and the weeds were not high enough to obstruct such view. When the automobile got about seventy feet from the railroad track, there was no obstruction whatever between it and the train as far from the crossing as seven or eight hundred feet at least. The public road went up an incline, commencing some thirty feet from the track, so as to pass over the elevated roadbed. The evidence was that an automobile going at the rate of speed of this one could be stopped within ten feet, especially when going up the incline to the track. It appeared that neither the train nor the automobile slacked their speed to any appreciable extent before the actual collision. The train was then stopped in about twelve hundred feet, and the only evidence on the subject was that this was the shortest distance in which it could have been stopped.

The only witness used by plaintiffs who saw the actual collision was in a cotton field some two hundred yards east and a little south of the crossing. The fireman on the engine had met with a serious accident after this accident and before the trial, tending to render him mentally incapable of testifying, though his evidence given at another trial involving the same facts was offered by defendant but excluded. The engineer, who was on the right or west side of the engine cab, testified as to what actually happened, thus: "I sounded two long and two short blasts of the whistle, which was the crossing whistle, and turned on the bell ringer which rings the bell and it is operated by air automatically. The bell was still ringing after the accident and after the train was stopped. I did not see the approach of this man Oxford. I could not see him from my location because he was on the other side of the locomotive boiler from me. The first indication I had that Oxford or somebody was in danger was when the fireman called to me to stop. He jumped up like that (indicat-

ing) and said: 'Stop, my God, we have killed some people,' and I applied the emergency brake. My engine at that time was right near the crossing. I had just turned loose of the whistle at that time and had dropped my hand down about three feet and taken the brake valve to make the stop, and I could see by his expression that there was something wrong. I had hold of the brake and I pulled it on back and heard the crash of the automobile tearing down the cattle guard. There was nothing else for me to do that I know of. There was nothing else that I could do. The train ran about twelve hundred feet before it stopped. From my twenty-five years' experience as an engineer, I know the train couldn't have been stopped in any shorter distance than it was on that day, because I did everything in my power to stop it. The train was running fifty miles an hour, which is seventy or seventy-two feet a second." He also testified to giving the crossing whistle, beginning at the whistling post eighty rods from the crossing and sounding the blast till he was within fifty to seventy-five feet of the crossing; also that the bell was rung by the automatic ringer, which he started at the eighty-rod post, and was kept ringing and was still ringing when the engine stopped after the collision. There was strong corroborating evidence, both by the other trainmen and persons nearby, that the whistle was sounded and the bell kept ringing and was still ringing when the engine came to a stop. The engineer also testified that as he approached this crossing he kept a sharp and constant lookout for persons or anything upon the track; that he kept a lookout all the time from the time he gave the station whistle (which was before the crossing whistle) until the train stopped. "I never had my eyes off the track."

Plaintiffs' only witness as to the collision, Terry Jillon, said he was about two hundred yards away from the collision, in the field picking cotton. He said the dirt road began to rise about thirty feet from the railroad track. At a distance of thirty feet it would rise to go over the railroad. "Oxford could have seen the train from back on the road. The railroad track runs level and straight there, and almost due north and south. The dirt road was practically level and runs east and west, crossing at right angles. There were some trees there a little above the crossing. There wasn't any leaves on these trees, and a fellow sitting in the car could look through those scattered trees and see the train coming down there. The whistle of the train blowed just before it struck the car. I was looking right straight at the train. By the time the sound of the whistle got to where I was it had struck the car. I saw the steam from the whistle and by the time the sound got to me it had struck. If it whistled before that I didn't hear it, and I don't see why I shouldn't have heard it if it had whistled. I didn't hear the bell ringing until the accident happened, but I did hear it after it passed

the crossing. After the automobile pulled out of the mud about two hundred yards from the crossing, there was nothing to prevent them from looking up and seeing the train coming except these trees and a little house and those telegraph poles. After the car moved out of the mud hole it picked up a little faster and I don't think it ever attempted to stop before it was struck. If it did, I didn't see it. It was running something like ten miles an hour and could have been stopped in ten feet or less. I had no occasion to pay any attention whether the bell was ringing or not, no more than being there looking right at it. I didn't notice the bell ringing, and if it was, I didn't hear it. Trains pass there and I don't pay any attention to them, and even sit in a room with a clock and don't hear it. If it rang a bell and blew a whistle, I didn't hear them, but I am not saying it didn't do either or both. I am not saying that the train didn't whistle for the station back up there a mile from the station; neither am I saying it didn't whistle at the whistle board for the crossing. I am saying if it did, I didn't notice it. The Oxford home was about a quarter and a half from this crossing, east. This grove of trees was right up close to the right of way. From the Oxford house to the railroad, northwest from his house, there wasn't anything there to prevent anyone from seeing the train as it was coming. It was right across a cotton field, but up on the side of the road there were these few trees. Oxford might have been in a position for a short space so that he couldn't have seen it, while it was running behind one tree or some other little obstruction, but a train seven or eight cars long, one or two trees wouldn't keep him from seeing some part of the train; at least I don't think it would.''

██ ██ The defendant assigns error in the giving and refusing of instructions. On behalf of the plaintiffs, the court gave this instruction: ''If deceased was injured by the running of a railroad train at a public crossing, the law presumes that the injury was negligently done. But the railroad company, to avoid liability for such injury, shall be permitted to show by a preponderance of the evidence that the injury was not the result of the negligence of the railroad company, or that deceased was guilty of contributory negligence of a degree that will defeat recovery, or by any other means, which, under the law of this case, will defeat recovery.'' This instruction, we think, constitutes error.

This instruction is based on the Arkansas statute providing that railroads shall be responsible for all damages to persons and property caused by the running of trains in that state. This statute is construed to mean, not that railroads are insurers against injury and are to be held liable in all events for damages caused by running trains, but that when a person is shown to have been damaged by a running train, a prima-facie case of negligence on the part of the railroad is made. ''Where it is established that the plaintiff was

injured by the operator of a train, a prima-facie presumption arises that the railroad is negligent." [Kansas City Southern Ry. Co. v. Drew, 103 Ark. 374.]

The court, therefore, correctly tried this case on the theory that when plaintiffs showed that Oxford was killed by defendant's train at this crossing, this made a prima facie case that defendant was negligent in the manner specified in the petition in failing to ring the bell or sound the whistle, and in failing to keep a constant lookout by its trainmen as it approached the crossing; and that if it had done so, it could have prevented killing the deceased. The statute requiring such lookout to be kept expressly says that "the burden of proof shall devolve on the railroad to establish the fact that this duty to keep such lookout has been performed."

In St. Louis-San Francisco Ry. Co. v. Cole, 181 Ark. 780, a case similar to this, that court stated the rule thus: "It is the established doctrine of this State, under Section 8562, C. & M. Digest, that where an injury is caused by the operation of a railway train, a prima facie case of negligence is made against the company operating such train. When the evidence shows that an injury was caused by the operation of a train, the presumption is that the company operating the train is guilty of negligence, and the burden is upon such company to prove that it was not guilty of negligence. [St. L. S W. Ry. Co. v. Vaughan, 180 Ark. 559, 21 S. W. (2d) 971.]" The court in that opinion then limited the effect of such rule to be that when plaintiff thus made a prima-facie case, the burden was cast on defendant to dispel such prima-facie case by producing evidence showing that it was not negligent in the manner claimed. When this is done, the prima facie presumption disappears from the case and the case should go to the jury on the evidence introduced alone without any regard to a presumption. Thus that court further said: "The Supreme Court of the United States recently said, in construing a statute similar to the Arkansas statute: 'The only legal effect of this inference is to cast upon the railway company the duty of producing some evidence to the contrary. When this is done, the inference is at an end, and the question of negligence is one for the jury upon all the evidence.' [Western & Atl. Railroad Co. v. Henderson, 279 U. S. 639.] After the introduction of evidence by the railroad company, as we have already said, the inference is at an end. It cannot be considered by the jury as evidence. . . . Under the construction placed upon statutes like ours, the presumption of negligence is at an end when the railroad company introduces evidence to contradict it, and the presumption cannot be considered with the other evidence, because to do this would, as stated by the Supreme Court of the United States, be unreasonable and arbitrary, and would violate the due process clause of the Fourteenth Amendment. Therefore, in determining whether the evidence in this case is legally

sufficient to support the verdict, we cannot consider the presumption created by the statute, but must determine the question from the evidence introduced.''

In the case cited in the Supreme Court of the United States, Western & Atl. Railroad Co. v. Henderson, 279 U. S. 639, 73 L. Ed. 884, the court was considering a statute of Georgia which provided: ''A railroad company shall be liable for any damages done to persons, stock or other property by the running of the locomotives, or cars, or other machinery of such company, or for damage done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company.'' The State court construed such statute to mean that in a suit for wrongful death at a crossing, ''when the fact of the killing has been made to appear, the presumption arises that the defendant company was negligent in each of the particulars specified in the petition, and the burden thereupon shifts to the defendant company to show that its employees exercised ordinary care and diligence in such particulars,'' as the jury had been instructed. As to such holding, the United States Supreme Court said: ''Upon the mere fact of collision and resulting death, the statute is held to raise a presumption that defendant and its employees were negligent in each of the particulars alleged, and that every act or omission in plaintiff's specifications of negligence was the proximate cause of the death; and it makes defendant liable unless it showed due care in respect of every matter alleged against it. And, by authorizing the jury, in the absence of evidence, to find negligence in the operation of the engine and train, the court necessarily permitted the presumption to be considered and weighed as evidence against the testimony of the defendant's witnesses tending affirmatively to prove such operation was not negligent in any respect.''

The United States Supreme Court then pointed out that in the case of Mobile, J. & K. C. Railroad Co. v. Turnipseed, 219 U. S. 35, 55 L. Ed. 78, it held valid a statute of Mississippi providing that ''Proof of injury inflicted by the running of the locomotives or cars of such (railroad) company shall be prima-facie evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury.'' The court then contrasts the two statutes and the construction given each by saying of the Mississippi statute: '' 'The only legal effect of this inference is to cast upon the railroad company the duty of producing some evidence to the contrary. When that is done, the inference is at an end, and the question of negligence is one for the jury upon all the evidence. . . . The statute does not . . . · fail in due process of law, because it creates a presumption of liability, since

its operation is only to supply an inference of liability in the absence of other evidence contradicting such inference.' That case is essentially different from this one. Each of the state enactments raises a presumption from the fact of injury caused by the running of locomotives or cars. The Mississippi statute created merely a temporary inference of fact that vanished upon the introduction of opposing evidence. [Citing Mississippi cases.] That of Georgia, as construed in this case, creates an inference that is given effect of evidence to be weighed against opposing testimony and is to prevail unless such testimony is found by the jury to preponderate.'' This is a clear holding that a state statute which raises a presumption of negligence from the fact of injury by a railroad train, if construed to mean merely a temporary inference requiring the production of evidence to refute the negligence, and when that is done, the inference or presumption disappears and leaves the jury to decide the case on the evidence free of any presumption, then the statute is valid; but if such statute creates a presumption which inheres in the case, and, like the presumption of innocence in criminal cases, abides throughout the case and has ''the effect of evidence to be weighed against opposing testimony and is to prevail unless such testimony is found by the jury to preponderate,'' then such statute or that construction of same must be held invalid.

The effect of this Instruction No. 3 given for plaintiffs is to put before the jury for its consideration the fact that because deceased was injured by a running train at a public crossing, the law presumes that the injury was negligently done, although the railroad is allowed to ''show by a preponderance of the evidence'' that the injury was not caused by its negligence or that the deceased was negligent in a greater degree. How is the jury to weigh the evidence in determining the preponderance or greater weight except to weigh defendant's evidence against this presumption in plaintiffs' favor plus any evidence for them? There can be no doubt but that defendant discharged the burden cast on it of producing evidence, which, standing alone, disproved negligence on its part. Under the authorities cited, the presumption of negligence then disappeared from the case and the case should have gone to the jury on the evidence only with no presumption in favor of either party. The jury had nothing to do with any presumption and it had no place in the instruction. There was no need of telling the jury that, in the absence of evidence to the contrary, the law presumes the defendant negligent, as there was evidence to the contrary.

This court considered this same question in Kirkdoffer v. Railway Co., 327 Mo. 166, 172, 37 S. W. (2d) 569, and condemned an instruction similar to the one here given and pointed out that if the Supreme Court of Arkansas had, as claimed, put a wrong construction on its

statute in earlier cases, it got right in the Cole case, supra, and as this court had in Hiatt v. Railroad, 308 Mo. 77, 102, 271 S. W. 806, erroneously followed the earlier Arkansas cases, we should no longer follow that case. The Hiatt case held that the Arkansas statute created a substantive right which inhered in plaintiff's case. The Kirkdoffer case held, in accordance with the Cole case in Arkansas, that an instruction was erroneous which "submitted to the jury the question of fact whether the defendant was negligent in a manner to cause the death with the prima facie presumption weighing against any evidence produced by defendant," and that "if that presumption or inference is to prevail as evidence to the contrary, it would violate the due process provision of the Fourteenth Amendment."

It is claimed that the Supreme Court of Arkansas has in later cases put a different construction on this statute than in the Cole case, in accordance with the earlier decisions as followed by this court in the Hiatt case, supra. [Mo. Pac. Railroad Co. v. Sandifur, 183 Ark. 196, and Mo. Pac. Railroad Co. v. Foltz, 182 Ark. 941.] We do not so understand, and in fact that court could hardly put such a construction on the Arkansas statute as would make it violative of the due process clause of the United States Constitution. If it did so, this court would not be bound to follow such construction.

We think also that Instruction No. 2 given for plaintiffs is objectionable as being likely to mislead the jury. Said instruction reads, in part: "You are instructed that it was the duty of the defendant railroad to keep someone constantly upon a lookout for persons and property on or near the track and in a position where he could signal the engineer or fireman, and failure to do so, if there was such a failure, was negligence, etc." This instruction was likely understood as requiring the railroad to keep some person other than the fireman and engineer as a lookout whose duty it would be to keep a constant lookout for persons or obstacles on the track and to "signal the engineer or fireman" in case of any such danger. The statute in question does not require this, but only that "the persons running the train" shall keep such constant lookout. Such was the ruling of this court in Kirkdoffer v. Railway Co., 327 Mo. 166, 177, 37 S. W. (2d) 569. We need not decide whether, if this was the only error, the instructions given for defendant might not have counteracted such error.

We also think that the court erred in not giving defendant's instruction telling the jury that the deceased was guilty of contributory negligence as a matter of law. That question was not a submissible issue under the evidence in this record. It is true that under the Arkansas statute, contributory negligence does not defeat recovery unless the jury finds that the contributory negligence of the deceased was of an equal or greater degree than that of the defendant. This latter proposition may have been a question for the jury,

but not so of his being guilty of contributory negligence. The jury should have been told that the deceased was, under the evidence, guilty of contributory negligence, and that the damages, if any, should be diminished in proportion. The facts clearly show that deceased was negligent in driving his car onto the track immediately in front of a fast moving train which was plainly visible if not hearable, had the deceased looked. He was familiar with the crossing. He knew the track was there, itself a warning of danger, and that he was going upon the incline to pass over it. He could have stopped in safety within ten feet. From the large sign placed there reading, "Stop Arkansas Law," we take it that travelers on highways in that State are required to stop before crossing railroad tracks. But, in any event, there is no excuse shown for the deceased giving no heed whatever to this approaching train. [Sullivan v. Railroad, 308 Mo. 48, 68, 271 S. W. 983, and cases cited; Mo. Pac. Railroad Co. v. Bode, 168 Ark. 157; St. Louis-San Francisco Ry. Co. v. Haynes, 177 Ark. 104; St. Louis-San Francisco Ry. Co. v. Horn, 168 Ark. 191; Huff v. Railroad, 280 S. W. (Ark.) 648.]

The defendant insists that its demurrer to the evidence should have been sustained. The case went to the jury on the alleged failure of defendant to give the statutory signals and failure of its trainmen to keep a constant lookout as the train approached the crossing. We shall not reverse the case outright as on another trial the evidence may be somewhat different. On the question of the failure to ring the bell or sound the whistle beginning eighty rods from the crossing and continuing till the crossing was reached by the engine, the evidence is not very strong or definite. There was a whistling post for the station reached before the whistling post for the crossing. Whether the train whistled there is not material except as it tests the witnesses' memory, ability to hear, etc. Defendant's evidence is sufficient to show compliance with the statute, particularly as to ringing the bell. The plaintiffs' evidence is that of a single witness and necessarily negative in character. We have set it out in the statement of the case. We are inclined to hold it sufficient to take the case to the jury. As to the engineer and fireman keeping a constant lookout, the engineer did not and could not see the deceased as he approached the crossing on account of being on the other side of the engine cab and his vision of a person coming from the east being obstructed by the engine boiler. The fireman did not testify, though his opportunity for seeing deceased as he approached from the east was much better. There was some evidence that the fireman has become mentally incapable of testifying. This is to be regretted. The fact that the engineer testified that the first he knew of any person being in danger was that the fireman suddenly jumped up and said, "Stop, my God, we have killed some people," indicates strongly that the fireman did not discover the deceased till the engine was right on the crossing. This

negatives a constant watch. There was evidence on which to submit the case on the humanitarian doctrine as the engineer might have stopped the deceased from entering on the track by giving one or two sharp blasts of the whistle when the trainmen saw or could have seen him approaching.

The defendant offered in evidence the transcript of the evidence of the fireman on the train in question given in the trial of the case entitled Florence Oxford v. Railroad, tried in the First Judicial Circuit of Arkansas. The stenographer of that court identified the transcript as correctly showing his evidence and that same was preserved in the bill of exceptions filed in that court. Defendant claims that this evidence should have been admitted under the rulings in Lampe v. St. Louis Brewing Assn., 204 Mo. App. 373, 221 S. W. 447, approved by this court on *certiorari* in State ex rel. v. Reynolds, 226 S. W. 579, and in Harrell v. Railroad, 186 S. W. 677. Under the present record, the court cannot be convicted of error in rejecting the evidence. There is no showing that the issues in such other case were the same as here other than that "it grew out of the same action." We are not informed and can only surmise as to even the general nature of that action. Nor is it altogether satisfactorily shown that this witness was so mentally deficient as to be incapable of testifying. On another trial both parties may want this witness' evidence, and if not, the record can be put in better shape to show its competency or incompetency.

The result is that the case is reversed and remanded. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by Sturgis, C., is adopted as the opinion of the court. All of the judges concur.